UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
    -against-                         :           NOTICE OF MOTION TO
                                      :           SUPPRESS
KYLE BALKISSOON,                      :
                                      :           21-CR-186 (EK)
                                      :
            Defendant.                :
------------------------------------------------------X

PLEASE TAKE NOTICE, that the defendant KYLE BALKISSOON, by his attorney MIA EISNER-GRYNBERG, ESQ., of the Federal Defenders of New York, Inc., will move the Court, before the Honorable Eric Komitee, United States District Judge for the Eastern District of New York, for an Order:

1. Suppressing physical evidence to be offered at trial, specifically: one 9mm pistol and ammunition, and one bag containing marijuana, recovered on or about February 7, 2021, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution, or, in the alternative, directing that a hearing be held outside of the presence of the jury before trial as to the admissibility of such evidence; and

2. Suppressing any statements to be offered at trial allegedly made by the defendant to government agents on or about February 7, 2021, pursuant to Fed. R. Crim. P. 12(b)(3)(C), 18 U.S.C. § 3501, and the Fourth and Fifth Amendments of the United States Constitution, or, in the alternative, directing that a hearing be held outside the presence of the jury before trial as to the admissibility of such statements; and

3. Granting such other and further relief as the Court may deem just and proper.

DATED:    BROOKLYN, N.Y.
          July 22, 2021

                                              /s/
                                    MIA EISNER-GRYNBERG, ESQ.
                                    Attorney for Mr. Kyle Balkissoon
                                    Federal Defenders of New York, Inc.
                                    1 Pierrepont Plaza, 16th Floor
                                    Brooklyn, N.Y. 11201
                                    (718) 330-1257

TO:     JACQUELYN M. KASULIS
        Acting United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, N.Y. 11201
        By:     Assistant U.S. Attorney Dana Rehnquist

CC:     Clerk of the Court (by ECF) (EK)
        Mr. Kyle Balkissoon (by US mail)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA                  :
                                          :
   -against-                             :        MOTION TO SUPPRESS
                                          :
KYLE BALKISSOON,                          :        21-CR-186 (EK)
                                          :
   Defendant.                            :
-------------------------------------------------------X

       MIA EISNER-GRYNBERG, ESQ., declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.    I am an attorney employed by the Federal Defenders of New York, Inc., and am the attorney of record assigned to represent Defendant KYLE BALKISSOON.

    2.    This declaration is submitted in support of the Defendant's motion for an order:

        A.    Suppressing physical evidence to be offered at trial, specifically: one 9mm pistol and ammunition, and one bag containing marijuana, recovered on or about February 7, 2021, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution, or, in the alternative, directing that a hearing be held outside of the presence of the jury before trial as to the admissibility of such evidence; and

        B.    Suppressing any statements to be offered at trial allegedly made by the defendant to government agents on or about March 30, 2019, pursuant to Fed. R. Crim. P. 12(b)(3)(C), 18 U.S.C. § 3501, and the Fourth and Fifth Amendments of the United States Constitution, or, in the alternative, directing that a hearing be held outside the presence of the jury before trial as to the admissibility of such statements; and

        C.    Granting such other and further relief as the Court may deem just and proper.

    3.    This declaration is based on records on file in our office, discussions with the defendant, independent investigation and discovery provided by the government.

    4.    This motion surrounds the stop and search of the contents of an automobile. Mr. Balkissoon was the driver of the vehicle.

1

5. Exhibit A is a Dropbox link containing four files, received in discovery, which captured portions of the encounter between NYPD officer and Mr. Balkissoon, available here: https://bit.ly/3kI138Q.  Exhibit A1 is a 91-second excerpt of body-worn camera ("BWC") footage from NYPD Officer Hassan.  Exhibit A2 is a 45-second excerpt of BWC footage from NYPD Officer Gomez.  Exhibit A3 is a still photograph, taken from BWC footage from NYPD Officer Martinez.  Exhibit A4 is a 13-second excerpt of Officer Martinez's BWC.  Exhibit B is a declaration signed by Kyle Balkissoon, explaining his interactions with the New York City Police Department on February 7, 2021.  Exhibit C is a laboratory report.  Exhibits A-C present disputes over material facts, requiring an evidentiary hearing. *United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992).

6. As the licensed driver of his automobile, Balkissoon clearly has standing to challenge the stop and search of that vehicle.  *Delaware v. Prouse*, 440 U.S. 648 (1979).

7. Upon information and belief, the BWC worn by NYPD officers are always running.  When an officer presses "on," the camera reaches back and retains 30-120 preceding seconds (the "pre-event buffer period") of video, though not audio, depending on the police department's settings; from the pressing of "on," the camera records both audio and video until the officer presses "off."  *See Managing Device Settings*, MyAxon (July 22, 2021), *at* https://my.axon.com/s/article/Managing-Device-Settings.  Upon information and belief, at the time of Balkissoon's arrest, the NYPD's pre-event buffer period was 60 seconds.

Factual Background

8. As seen in Exhibit A1, NYPD officers began recording their encounter with Balkissoon only after stopping his car.  Because no police officer activated his camera prior to the stop—at least per the discovery provided by the government—no BWC documents the

location of the car, its contents, or any conversation between officers and Balkissoon at the time of the initial stop.

9. Exhibit A1, 00:00-01:00, is the silent pre-event buffer period (60 seconds) before Officer Hassan began recording his encounter with Balkissoon. The recording begins, in real time, at 1:23:57 AM, per the notation on the top right of the screen. During that portion, we see Balkissoon retrieving his drivers' license and registration, and providing them to Officer Hassan. As soon as Officer Hassan begins recording, captured at 1:03, we hear him state, "Alright listen, man, because there's weed in the car, they're just going to talk to you in the back, okay?" Balkissoon responds, "No problem." Officer Hassan instructs him to "Step out for me, watch the ice, and don't slip." Balkissoon gets out of the car and places his hands of top of it, as directed, and Officer Hassan begins to frisk him.

10. Exhibit A3 is a still image taken from Officer Martinez's BWC at the same time (1:23:57 AM) as the pre-event buffer period in Ex. A1, from the front passenger-side window. There is a bag of what appears to be marijuana visible on the center console. According to Balkissoon's declaration, he was not smoking marijuana in the car, and there was no loose, burning, or burnt marijuana in the car. Ex. B ¶ 3.

11. After Balkissoon is brought to the back of the car as directed, another NYPD officer, believed to be Officer Modesto, detains him physically and begins to speak to him, captured on Exhibit A2 (Officer Gomez's BWC). The officer states to Balkissoon, "Listen man. I notice that you got arrested awhile back for a firearm. Can you just give me a little bit of details of what happened with that situation? How did it go in court and everything?" Balkissoon respond, "I got locked up for a charge I did when I was younger, and that was it." The officer goes on to ask, "Quick question with regards to the gun. Did they take it off of you,

3

or did they find it in the car or something like that?" Balkissoon responds, "I was locked up with a bunch of people, they found it on somebody else's person." The officer goes on, "Oh, there you go, see, that's what we're trying to clarify here. That's what we're trying to do. Face forward man, take your hand off the car." Balkissoon asks, "I'm just trying to wonder like, why you all…" The officer cuts him off and says, "listen man, face forward, let me explain something to you. Because that's on your record, we have to make the assumption that you probably have it."

12. While officers detained and spoke to Balkissoon at the rear of the vehicle, other officers searched the entirety of his car, beginning with the front driver's and passenger's seats and closed containers therein. In Exhibit A4, Officer Martinez opens the rear passenger side door and begins to search a backpack on the back seat, which he removes items from, before stating, "Yo. Ninety-two," the NYPD radio code for "arrest." Officers later recover a 9mm firearm from inside of this backpack. An NYPD laboratory report later concluded that the bag of marijuana first seen on the BWC footage on the center console contained 1.670 grams of marijuana. Ex. C.

Legal Argument

13. The encounter between the police and Balkissoon contains three discrete moments: (1) the stop of the vehicle; (2) the search of the backpack in the back seat of the vehicle; and (3) the questioning of Balkissoon at the rear of the vehicle.

**A.  Car Stop**

14. The unwarranted stop of Balkissoon's vehicle was not justified by any lawful suspicion of criminal activity. Therefore, any evidence recovered as a result of the unlawful stop

4

is suppressible as fruit of the poisonous tree, as a violation of the Fourth Amendment of the United States Constitution. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

15. The officers' initial stated justification for the stop, provided in discovery in unsworn police reports, was that Balkissoon was blocking a pedestrian walkway. As Balkissoon explains in his declaration, as visible on the BWC, and as corroborated by Officer Hassan advising Balkissoon to avoid slipping on the ice, there was a significant quantity of snow on the ground, blocking the curb. Balkissoon "pulled over as close to the curb as [he] could," while waiting outside his girlfriend's home, which he explained to Officer Hassan. Under the circumstances—against a snow drift, at 1:30 AM, when no pedestrians were present—the location of Balkissoon's car did not constitute any traffic infraction.

16. On the contrary, the statements made by Officer Modesto at the rear of the vehicle suggest that officers stopped Balkissoon's car not because of any traffic infraction, but because they were aware of his prior gun conviction and, as expressly stated, "Because that's on your record, we have to make the assumption that you probably have it"—another firearm. The Fourth Amendment does not permit the stop—or search—of a defendant or his vehicle based solely on the officer's knowledge of his prior conviction.

    **B.**    **Search of Backpack in Balkissoon's Backseat, Recovering the Gun**

17. As depicted in Ex. A3, at some point following the stop of Balkissoon's vehicle, a small, commercially packaged bag of marijuana is on the center console. Because the officers opted not to record the stop of the vehicle, they lack evidence as to how it came to be there, what questions they asked of Balkissoon, and how he answered, requiring fact-finding at an evidentiary hearing.

18. There is no dispute as to how the police officers moved from the initial stop of the car to the search. As Officer Hassan stated, "because there's weed in the car, they're just going to talk to you in the back, okay?," Ex. A1, whereupon officers begin to search every part of the car, and the closed containers therein. Eventually, in the backseat, they find a gun within a backpack, concealed under other items.

19. The search of Balkissoon's backpack, in the back seat of his car, was not justified by the 1.67-gram bag of marijuana recovered from the center console. Officers stopped Balkissoon in his car on February 7, 2021. On that date, possession of the quantity of marijuana in Balkissoon's car had been decriminalized. From August 28, 2019 until March 30, 2021,[1] possession of less than one ounce of marijuana was a non-criminal violation punishable only by a fine of not more than fifty dollars. N.Y. Penal Law § 221.05 (prior version). As at least one New York appellate court has held, during the decriminalization period, "the odor of marijuana, together with a de minimis amount of marijuana found in the center console of the vehicle, did not furnish the requisite probable cause to search the trunk of defendant's vehicle." *People v. Ponder*, 146 N.Y.S.3d 628, 630 (N.Y. App. Div. 1st Dept. 2021). Rejecting a per se rule that discovery of a personal use quantity of marijuana permits a full search of the vehicle and its contents, the *Ponder* court held that such a search, when pursuant to the automobile exception, required a "factual nexus between the possession of an amount of marijuana consistent with personal consumption and a search for contraband in the trunk of the vehicle." *Id*.

---

[1] On March 31, 2021, the New York Marijuana Regulation and Taxation Act was signed into law, eliminating Penal Law Section 221, and adding Section 222. Penal Law § 222.05(4) states that, "the odor of burnt cannabis shall not provide probable cause to search any area of a vehicle that is not readily accessible to the driver and reasonably likely to contain evidence relevant to the driver's condition." *See Ponder*, 146 N.Y.S.3d at 630 n.1.

6

20. No such nexus was found by the Appellate Division in *Ponder*; none is present here. Neither is a backpack in the back seat meaningfully different from the trunk: the automobile exception permits a search of the vehicle and its contents for contraband, upon probable cause. On the date of Balkissoon's stop and search, 1.67 grams of marijuana was not contraband, and there is no factual nexus between the bag on the center console—when and however it got there—and a search for contraband in the backpack in the back seat. As NYPD officers, the police who stopped Balkissoon were required to follow New York law, and cannot cure an unlawful search by moving their case to federal court. *E.g.*, *United States v. Jones*, 438 F. Supp. 3d 1039 (N.D. Cal. 2020); *United States v. Talley*, 467 F. Supp. 3d 832 (N.D. Cal. 2020); *c.f. United States v. Whitlock*, 2021 WL 1439846, at *6 (D. Vt. Apr. 16, 2021) (allowing search because officers were federal, not local, law enforcement).

21. Upon the finding of 1.67 grams of marijuana in Balkissoon's center console, NYPD officers were permitted to issue him a ticket for a fine of up to fifty dollars. Removing him from his vehicle and unlawfully extending his detention in order to search his entire vehicle and its contents was unlawful. *Rodriguez v. United States*, 575 U.S. 348 (2015). Just as police officers cannot exploit a traffic stop for a traffic infraction to get a dog to sniff for narcotics, officers cannot use the pretext of writing a $50 ticket to search closed containers in the back seat. Indeed, the officers here never wrote Balkissoon a ticket. Their function was only, and always, to conduct a warrantless search for a gun.

C. **Interrogation of Balkissoon**

22. It is clear that while Balkissoon was physically detained at the rear of his vehicle by a police officer, he was not free to leave. In that posture, officers asked him about his prior conviction for a firearm, asked whether it was in a car, and told him they had to assume he had

7

another firearm, questions clearly designed to elicit an incriminating response. Prior to asking Balkissoon these questions, no officer issued him *Miranda* warnings. Accordingly, asking him these questions while physically restraining him is custodial interrogation in violation of the Fifth Amendment, or the functional equivalent of interrogation. *E.g.*, *Rhode Island v. Innis*, 446 U.S. 291 (1980).

23. For the foregoing reasons, the defendant respectfully requests that the Court (i) suppress the marijuana, firearm and ammunition obtained from Balkissoon's vehicle on February 7, 2021; and (ii) suppress the statements obtained from Balkissoon; or, in the alternative, hold an evidentiary hearing outside the presence of the jury before trial to resolve any factual or legal issues raised by this motion; and (iii) grant such other and further relief that the Court deems just and proper.

DATED:      BROOKLYN, N.Y.
               July 22, 2021

                                                  /s/
                                             MIA EISNER-GRYNBERG, ESQ.
                                             Attorney for Mr. KYLE BALKISSOON
                                             Federal Defenders of New York, Inc.
                                             1 Pierrepont Plaza, 16th Floor
                                             Brooklyn, N.Y. 11201
                                             (718) 330-1257

# **EXHIBIT B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA          :
                                  :
         -v-                      :     **DECLARATION**
                                  :
Kyle Balkissoon,                  :     21-CR-186 (EK)
                                  :
         Defendant.               :
-------------------------------------------------------X

I, **Kyle Balkissoon,** hereby declare under the penalties of perjury, pursuant to 28 U.S.C. Section 1746, that:

1. I am the defendant in this action. This declaration is made in support of a motion to suppress. My lawyer prepared this declaration. It only contains those facts my lawyer thought necessary to include and I am aware of other facts not included.

2. At around 1:20 AM on February 7, 2021, I drove my car to my girlfriend's house. I pulled over at the corner of Cortelyou Road and East 34th Street, in Brooklyn, where she lives. It had been snowing, so I pulled over as close to the curb as I could.

3. I was not smoking marijuana in my car. There was no loose, burning, or burnt marijuana in my car.

4. While I was parked, police officers approached my car. They asked what I was doing there, and I told them the truth, that I was waiting for my girlfriend to come downstairs.

5. Many officers surrounded my car and started looking inside with flashlights. They asked me for my license and registration, which I gave them. They asked me to step out of the car, which I did.

6. Once I got out of the car, police officers asked me about a prior case of mine. I

answered their questions.

7. I saw police officers search my whole car and everything in it, including a backpack that I had on the rear seat.

8. I declare under penalties of perjury that the foregoing is true and correct.

_____
Kyle Balkissoon

Dated:   Brooklyn, New York
         July 16, 2021

# **EXHIBIT C**

# LABORATORY REPORT



**NEW YORK CITY POLICE DEPARTMENT**
**POLICE LABORATORY**
**CONTROLLED SUBSTANCE ANALYSIS SECTION**

| | |
|---|---|
| LABORATORY # | 2021-007351 |
| LABORATORY REPORT # | 3 |
| COMPLAINT # | 2021-067-01081 |
| INVOICE # | 3001310454 |

**INVOICED BY:** POM HAROONUL HASSAN Tax#: ▮▮▮  Command: 067 Precinct
**DEFENDANT(S):** KYLE BALKISSOON    AGE: 26

**DATE SUBMITTED:** 02/08/2021
**ANALYSIS STARTED:** 02/09/2021
**ANALYSIS COMPLETED:** 02/09/2021

**TYPE OF ANALYSIS:** CONTROLLED SUBSTANCE ANALYSIS

EVIDENCE PRESENT AS ITEMIZED ON INVOICE: [X] YES  [ ] NO (SEE REMARKS)

**RESULTS OF EXAMINATION/ANALYSIS**

| Item # | Qty. | Description | Results | Weight |
|---|---|---|---|---|
| 4 | 1 | Ziplock bag(s) cont. vegetative matter | Marihuana | 1.670 g (aggregate wt.) |
| 5 | 1 | Scale(s) cont. vegetative matter residue | No Analysis | N/A |

**SUMMARY OF ANALYSIS**

| Substance Identified | Item # | Weight |
|---|---|---|
| Marihuana | 4 | 1.670 g (aggregate wt.) |

**REMARKS**

| ⅛ oz = 3.544 g | ½ oz = 14.175 g | 2 oz = 56.700 g | 4 oz = 113.399 g | 8 oz = 226.797 g | 16 oz = 453.593 g = 1 lb | 4535.924 g = 10 lbs |
|---|---|---|---|---|---|---|

Laboratory Item(s) #4 and 5 are Invoice Item(s) #1 and 2 from Invoice #3001310454.

Item #4: The above result of marihuana is based, in part, on an evaluation of total delta 9-tetrahydrocannabinol (delta 9-tetrahydrocannabinol and decarboxylated delta 9-tetrahydrocannabinolic acid).

**TESTING METHODOLOGY**

| Unit/Item # | Item # | Methods Used |
|---|---|---|
| 4 | 4 | Color Test, Macroscopic Examination, Microscopic Examination, GC/MS |
| 5 | 5 | N/A |

THE RESULTS STATED ABOVE RELATE ONLY TO THE ITEMS TESTED OR SAMPLED AND APPLY TO THE SAMPLE AS RECEIVED. THIS REPORT DOES NOT CONSTITUTE THE ENTIRE CASE FILE. THE CASE FILE MAY BE COMPRISED OF WORKSHEETS, IMAGES, ANALYTICAL DATA AND OTHER DOCUMENTS. THIS REPORT SHALL NOT BE REPRODUCED EXCEPT IN FULL WITHOUT APPROVAL OF THE LABORATORY TO PROVIDE ASSURANCE THAT PARTS OF A REPORT ARE NOT TAKEN OUT OF CONTEXT. THE DEFINITIONS OF TERMS USED IN THIS REPORT CAN BE LOCATED AT THE NEW YORK STATE DIVISION OF CRIMINAL JUSTICE SERVICES WEBSITE:
http://www.criminaljustice.ny.gov/forensic/labreportstandards.htm
THE RESULTS ARE THE OPINIONS / INTERPRETATIONS / CONCLUSIONS OF THE UNDERSIGNED.
I HEREBY CERTIFY THAT I TESTED/EXAMINED/ANALYZED THE ABOVE DESCRIBED ITEM(S) AND THAT THIS REPORT IS AN ORIGINAL REPORT MADE BY ME. FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW.

| RANK/TITLE | AUTHORIZER/ANALYST NAME | ANALYST SIGNATURE | TAX # | DATE PREPARED | DATE ISSUED |
|---|---|---|---|---|---|
| CRIM IB | Andrew Sung | KB000108 | ▮▮▮ | 02/10/2021 | 02/11/2021 |

PAGE 1 OF 1