ICR:GSM
F. #2021R00231

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

KYLE BALKISSOON,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 21-CR-186 (EK)

THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Garen S. Marshall
Assistant U.S. Attorney
    (Of Counsel)

Date of Service: August 23, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND................................................................................... 2

I.   The Defendant's Prior Felony Convictions ..................................................... 2

II.  The Instant Offense......................................................................................... 3

ARGUMENT......................................................................................................... 7

I.   NYPD OFFICERS LAWFULLY STOPPED THE MERCEDES ON THE BASIS OF A TRAFFIC INFRACTION – STOPPING OR STANDING ON A CROSSWALK .......... 7

     A.  Applicable Law .......................................................................................... 7

     B.  Discussion .................................................................................................. 7

II.  THE OFFICERS' SEARCH OF THE MERCEDES WAS LAWFUL .............................. 9

     A.  The Search Was Lawful Under the Search-Incident-to-Arrest-Doctrine.................... 10

         1.  Applicable Law ..................................................................................... 10

         2.  Discussion............................................................................................. 11

             a.  The Officers Had Probable Cause to Arrest the Defendant for Illegally Stopping in a Crosswalk ................................................................ 11

             b.  The Officers Had Probable Cause to Arrest the Defendant for Illegally Possessing Marijuana........................................................ 12

             c.  The Search Was Lawful Under *Gant*............................................. 13

     B.  The Search was Also Lawful Under the Automobile Exception to the Warrant Requirement ............................................................................... 14

         1.  Applicable Law ..................................................................................... 14

         2.  Discussion............................................................................................. 16

III. THE DEFENDANT'S MOTION TO SUPRESS STATEMENTS HE MADE TO OFFICER MODESTO WHILE STANDING BEHIND THE MERCEDES IS MOOT.. 19

     A.  Applicable Law .......................................................................................... 19

     B.  Discussion .................................................................................................. 21

IV. THE COURT SHOULD DENY THE MOTION WITHOUT A HEARING .................. 22

    A.  Applicable Law ....................................................................................... 22

    B.  Discussion ............................................................................................. 23

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

Arizona v. Gant,
  556 U.S. 332 (2009)............................................................................................ passim
Atwater v. City of Lago Vista,
  532 U.S. 318 (2001)............................................................................................ 10, 12
Berkemer v. McCarty,
  468 U.S. 420 (1984)................................................................................................ 21
Brinegar v. United States,
  338 U.S. 160 (1949)................................................................................................ 18
California v. Acevedo,
  500 U.S. 565 (1991)........................................................................................... 16, 18
Cameron v. Smith,
  No. 11-CV-5100 (BMC), 2012 WL 1004893 (E.D.N.Y. Mar. 23, 2012) ............................... 23
Florida v. Harris,
  568 U.S. 237 (2013)................................................................................................ 18
Heien v. North Carolina,
  574 U.S. 54 (2014).................................................................................................... 7
Illinois v. Gates,
  462 U.S. 213 (1983)................................................................................................ 18
In re Terrorist Bombings of U.S. Embassies in E. Africa,
  552 F.3d 157 (2d Cir. 2008) ..................................................................................... 22
Lee v. Sanberg,
  136 F.3d 94 (2d Cir. 1997) ....................................................................................... 12
Miranda v. Arizona,
  384 U.S. 436 (1966)................................................................................................ 20
People v. Ponder,
  146 N.Y.S.3d 628 (1st Dep't 2021) ........................................................................... 17
Rakas v. Illinois,
  439 U.S. 128 (1978)................................................................................................ 15
Thornton v. United States,
  541 U.S. 615 (2004)................................................................................................ 11
United States v. Aparo,
  221 F. Supp. 2d 359 (E.D.N.Y. 2002) ....................................................................... 22
United States v. Carr,
  63 F. Supp. 3d 226 (E.D.N.Y. 2014) ......................................................................... 20
United States v. Chandler,
  164 F. Supp. 3d 368 (E.D.N.Y. 2016) ....................................................................... 23
United States v. Colon,
  No. 10-CR-498 (RPP), 2011 WL 569874 (S.D.N.Y. Feb. 8, 2011) ................................ 18, 19
United States v. Cuevas,
  No. 15-CR-846 (PKC), 2016 WL 2766657 (S.D.N.Y. May 12, 2016) .................................. 12

United States v. Dhinsa,
   171 F.3d 721 (2d Cir. 1998) ............................................................ 7, 9

United States v. Diaz,
   854 F.3d 197 (2d Cir. 2017) ............................................................ 10, 11

United States v. Faison,
   No. 15-CR-186, 2015 WL 5915964 (S.D.N.Y. Oct. 8, 2015) ........................................ 14, 19

United States v. Fisher,
   702 F.2d 372 (2d Cir. 1983) ............................................................ 10

United States v. FNU LNU,
   653 F.3d 144 (2d Cir. 2011) ............................................................ 20

United States v. Garcia,
   No. 18-CR-178 (AT), 2018 WL 3407707 (S.D.N.Y. June 5, 2018) .................................. 18, 24

United States v. Gaskin,
   364 F.3d 438 (2d Cir. 2004) ............................................................ 15

United States v. Gillette,
   383 F.2d 843 (2d Cir. 1967) ............................................................ 22

United States v. Gonzalez,
   441 F. App'x 31 (2d Cir. 2011) ......................................................... 11

United States v. Harrell,
   268 F.3d 141 (2d Cir. 2001) ............................................................ 7

United States v. Jackson,
   652 F.2d 244 (2d Cir. 1981) ............................................................ 18

United States v. Jenkins,
   452 F.3d 207 (2d Cir. 2006) ............................................................ 8

United States v. Legree,
   375 F. Supp. 3d 222 (E.D.N.Y. 2019) ................................................... 22

United States v. Mathurin,
   148 F.3d 68 (2d Cir. 1998) ............................................................. 23

United States v. Miller,
   No. 18-CR-395 (NGG), 2019 WL 2088248 (E.D.N.Y. May 13, 2019) .................................. 24

United States v. Mosquera,
   No. 07-CR-140 (DLI), 2013 WL 2396213 (E.D.N.Y. May 31, 2013) ................................. 19

United States v. Mottley,
   130 F. App'x. 508 (2d Cir. 2005) ...................................................... 24

United States v. Navas,
   597 F.3d 492 (2d Cir. 2010) ............................................................ 16, 17

United States v. Newton,
   369 F.3d 659 (2d Cir. 2004) ............................................................ 20

United States v. Ojo,
   630 F. App'x 83 (2d Cir. 2015) ......................................................... 9

United States v. Pierce,
   224 F.3d 158 (2d Cir. 2000) ............................................................ 19

United States v. Ross,
   456 U.S. 798 (1982) .................................................................... 15, 18

United States v. Scopo,
   19 F.3d 777 (2d Cir. 1994) ............................................................. 12

<u>United States v. Simmons</u>,
   351 F. Supp. 3d 214 (E.D.N.Y. 2018) ............................................................ 21
<u>United States v. Smith</u>,
   621 F.2d 483 (2d Cir. 1980) ........................................................................... 15
<u>United States v. Spencer</u>,
   No. 06-CR-413 (DLI), 2016 WL 6781225 (E.D.N.Y. Nov. 15, 2016) ................... 22
<u>United States v. Stewart</u>,
   551 F.3d 187 (2d Cir. 2009) ........................................................................ 7, 8
<u>United States v. Stewart</u>,
   604 F. Supp. 2d 676 (S.D.N.Y. 2009) ............................................................... 7
<u>United States v. Townsend</u>,
   No. 15-CR-653 (DLI), 2016 WL 3562055 (E.D.N.Y. June 23, 2016).................... 23
<u>United States v. White</u>,
   298 F. Supp. 3d 451 (E.D.N.Y. 2018) ............................................................. 12
<u>United States v. Wilson</u>,
   699 F.3d 235 (2d Cir. 2012) ......................................................................... 15
<u>Whren v. United States</u>,
   517 U.S. 806 (1996)...................................................................................... 7, 9

Statutes and Regulations

Cal. Bus. & Prof. Code § 26130(7)............................................................................ 4
Cal. Code Regs. tit. 4, § 17410 ................................................................................. 2
N.Y. Crim. Proc. Law § 140.10 .......................................................................... 11, 12
N.Y.P.L. § 10.00(1) ................................................................................................ 12
N.Y.P.L. § 160.15 ................................................................................................... 2
N.Y.P.L. § 221.05 .................................................................................................. 12
N.Y.V.T.L. § 1202(a)1.d........................................................................................ 8, 12
N.Y.V.T.L. § 155 .................................................................................................... 12

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition to the defendant's motion to suppress physical evidence seized from the defendant's vehicle on February 7, 2021; including a firearm, ammunition, and marijuana; and the defendant's statements made to law enforcement while standing behind the rear of his car on February 7, 2021.  (<u>See</u> Def.'s Mot., ECF No. 12.)  On April 6, 2021, a grand jury returned an indictment charging that the defendant, knowing that he had previously been convicted of a felony offense, knowingly and intentionally possessed a firearm.  (Indictment, ECF No. 1.)

In support of his motion, the defendant argues that the February 7, 2021 stop of his vehicle was "unwarranted" because "the location of [his] car did not constitute any traffic infraction."  (<u>See</u> Def.'s Mot. at 5.)  In addition, the defendant contends that law enforcement lacked probable cause to search an open backpack located in the back seat of the car.  (<u>Id.</u> at 5-7.)  The defendant supports this argument by noting that a bag of marijuana in the car's center console weighed only 1.67 grams and by claiming that the officers were improperly motivated to stop and search the defendant's car because of the defendant's criminal history.  (<u>Id.</u>)

The defendant's arguments seeking to suppress the firearm, ammunition, and marijuana are without merit, and his motion should be denied without a hearing.  First, New York City Police Department ("NYPD") police officers lawfully stopped the defendant's vehicle after observing it illegally standing on a pedestrian crosswalk.  Second, the undisputed evidence, including body camera video, establishes that the officers had probable cause to arrest the defendant for two separate offenses, and that their warrantless search of the vehicle was thus authorized by the search-incident-to-arrest doctrine.  Third, even if the officers lacked probable cause to arrest the defendant when they first approached his Mercedes, they quickly obtained information sufficient to establish probable cause to believe that contraband and other evidence

of criminal activity was present when they smelled and saw marijuana in the vehicle next to the defendant while the defendant sat with the windows down on a cold winter morning with rolling papers on his lap.  These facts provided the officers with probable cause to search the passenger compartment of the defendant's vehicle, including the backpack in the back seat, which was open and within arm's reach of the defendant as he sat in the car.  Fourth, the defendant's motion to suppress his statements to Officer Fabian Modesto in response to questioning while he was standing at the back of the car should be denied as moot because the government will not seek to admit them against the defendant at trial.  Finally, because the material facts supporting the lawful stop and search of the defendant's vehicle are undisputed, an evidentiary hearing is unnecessary to resolve the instant motion.

FACTUAL BACKGROUND

I.    THE DEFENDANT'S PRIOR FELONY CONVICTIONS

Prior to his arrest in this case, the defendant had been convicted of two felonies in the State of New York.  On April 9, 2014, in Queens County Supreme Court, the defendant was convicted of robbery in the first degree, in which the defendant or another participant in the crime displayed what appeared to be a firearm, a class B felony in violation of New York Penal Law ("N.Y.P.L.") § 160.15, for which the defendant was sentenced principally to six years' imprisonment.  On January 5, 2015, in Kings County Supreme Court, the defendant was again convicted of robbery in the first degree, in which the defendant or another participant in the crime displayed what appeared to be a firearm, a class B felony in violation of N.Y.P.L. § 160.15, for which the defendant was sentenced principally to seven years' imprisonment.  The defendant was subsequently released to parole supervision on September 26, 2019, and was still serving his term of parole on February 7, 2021, the date of the instant offense.

II.   THE INSTANT OFFENSE

At approximately 1:15 a.m. on February 7, 2021, NYPD Police Officers Julio Martinez, Fabian Modesto, Joseph Blum, Haroonul Hassan, Jose Gomez, and Michael Whiteman were on patrol, in uniform, in two unmarked cars, in Brooklyn's 67th Precinct.  As the lead car (containing Officers Martinez, Modesto, and Blum) approached the intersection of Cortelyou Road and East 34th Street, the officers observed a 2015 black Mercedes-Benz E350 sedan (the "Mercedes") standing diagonally in the middle of a pedestrian crosswalk with the engine running.  Officer Modesto, while driving the lead vehicle past the Mercedes, saw through the Mercedes's open front passenger window that an individual, later identified as the defendant, appeared to be rolling a marijuana cigarette while seated alone in the Mercedes's driver's seat. Officer Modesto immediately shared his observation with the other officers in the lead vehicle, and his observation was relayed by radio to the officers in the second vehicle: Hassan, Gomez, and Whiteman.

At that point, the officers stopped driving and Officers Hassan and Martinez approached the Mercedes from its driver and passenger sides, respectively.  Enclosed as Exhibit A1 is an image recorded by Officer Modesto's body camera,[1] which depicts Officers Hassan and Martinez during the stop and confirms that the Mercedes was blocking the pedestrian crosswalk. (See Ex. A1 (timestamped 01:24:53).)

As Officers Hassan and Martinez initially approached the Mercedes, which had its front windows open despite the cold temperature, they noticed a strong odor of marijuana.  In

_____

[1]  Videos recorded by the body cameras worn by Officers Modesto, Martinez, and Hassan will be provided to the Court and to defense counsel under separate cover as Exhibits A, B, and C, respectively. Still images taken from the body camera recordings are enclosed and numbered as Exhibits A1, B1, etc. Additionally, selected photographs taken by the NYPD Evidence Collection Team following the defendant's February 7, 2021 arrest are enclosed and numbered as Exhibits D1, D2, etc.

addition, they observed the defendant sitting alone in the vehicle with brown rolling papers on his lap, and they saw what appeared to be a small bag of marijuana in the car's center console. An image recorded by Officer Martinez's body camera depicts the rolling papers on the defendant's lap (red arrow) and the bag of marijuana in the center console (green arrow). (See Ex. B1 (timestamped 01:24:08).) A second angle, recorded by Officer Hassan's body camera, also depicts the rolling papers on the defendant's lap. (See Ex. C1 (timestamped 01:24:47).)

When Officer Hassan approached the driver's door, he asked the defendant for his license and registration and asked why the defendant was blocking the crosswalk. The defendant responded, in sum and substance, that he was waiting for his girlfriend who lived across the street. Then, Officer Hassan informed the defendant that he could smell marijuana. In response, the defendant lifted a small bag from the center console of his vehicle and said, in sum and substance, "this is all the marijuana I have." A photograph taken later by the NYPD Evidence Collection Team of the bag still in its location on the Mercedes's center console is enclosed as Exhibit D1. The bag's label includes an image of a golden triangle containing a marijuana leaf, and the bag's contents later tested positive for marijuana.[2] (See Ex. D2.)

By this point in their encounter with the defendant, Officers Hassan and Martinez had smelled the odor of marijuana emanating from the Mercedes, which had its front windows open; observed the rolling papers on the defendant's lap and the bag of marijuana in the Mercedes's center console; and heard the defendant himself confirm that there was marijuana in the Mercedes. Thus, Officer Hassan asked the defendant to step out of the Mercedes, stating to

---

[2] California law requires that the "universal symbol" of a triangle under which the letters "CA" are printed, and inside of which are images of a marijuana leaf and exclamation point, be printed on the label of all marijuana products produced in California. See Cal. Bus. & Prof. Code § 26130(7); Cal. Code Regs. tit. 4, § 17410. !

the defendant "because there's weed in the car." (See Ex. C at 01:24:58–01:25:03.) The defendant responded, "No problem" and stepped out of the Mercedes. (Id. at 01:25:03–01:25:20.) Officer Hassan briefly patted the defendant down before directing him to step behind the rear of the Mercedes with Officer Modesto. (Id. at 01:25:21–01:25:58.) Once the defendant stepped to the rear of the Mercedes, Officers Hassan and Martinez immediately began to search the passenger compartment—Hassan searching the driver's side and Martinez searching the passenger side. (Id. at 01:25:58–01:26:02.) Separately, once the defendant stepped to the rear of the Mercedes, he spoke with Officer Modesto about a previous firearm offense. (See Ex. A at 01:25:53–01:27:01.) Officers Hassan and Martinez did not participate in this conversation because they were engaged in the search of the Mercedes. (See Ex. C at 01:25:53–01:27:03.)

Following a brief search of the front of the Mercedes's passenger compartment, Officers Hassan and Martinez began to search the back seat of the passenger compartment. (Id. at 01:26:02–01:26:55.) As shown in Officer Modesto's body camera footage from just before the search began, there was an open backpack in the rear seat of the Mercedes within arm's reach of the driver's seat (yellow arrow). (See Ex. A2 (timestamped 01:25:29).)

While searching the rear passenger side of the Mercedes's passenger compartment, Officer Martinez shifted the contents of the open backpack and observed the butt of a gun. (See Ex. B at 01:26:55–01:27:01; Ex. C at 01:26:55–01:27:02.) Meanwhile, as the defendant stood just behind the Mercedes, he repeatedly attempted to look in Officer Martinez's direction as Officer Martinez got closer to the backpack. Enclosed as Exhibit A3 is an image recorded by Officer Modesto's body camera, which depicts the defendant (red arrow) looking in the direction of Officer Martinez (green arrow) at the approximate moment when Officer Martinez found the gun. (See Ex. A3 (timestamped 01:26:59).) Once Officer Martinez found

the gun, he signaled to his partners to arrest the defendant with the NYPD brevity code "92," and the defendant, still standing at the rear of the Mercedes, attempted to flee, passing within arm's reach of the backpack that still held the gun.  (See Ex. A4 (timestamped 01:27:01); see also Ex. A at 01:27:00–01:27:04; Ex. B at 01:27:00–01:27:04.)  Officers on the scene, including Officer Martinez, quickly apprehended the defendant as he fled and placed him under arrest.  (See Ex. A at 01:27:00–01:27:14.)  In the meantime, Officer Hassan went to the rear passenger side of the vehicle to guard the gun.  Enclosed as Exhibit C2 is an image recorded by Officer Hassan's body camera, in which the butt of the gun (red arrow) is visible inside of the backpack.  (See Ex. C2 (timestamped 01:28:33).)

After arresting the defendant, Officer Hassan drove the Mercedes back to the 67th Precinct.  In the precinct parking lot, members of the NYPD Evidence Collection Team recovered a Smith & Wesson model SW9VE, 9mm Parabellum caliber semi-automatic pistol, bearing serial number DVN9583, from the Mercedes.  The firearm was loaded with five bullets in its magazine.  A photograph taken at that time shows the loaded firearm sitting in the backpack inside of the Mercedes's passenger compartment.  (See Ex. D3.)

A subsequent forensic examination revealed the defendant's DNA on the firearm. In addition, the contents of the bag recovered from the Mercedes's center console tested positive for marijuana.

Finally, in addition to the loaded firearm, the officers recovered a portable digital scale from the backpack on which there appeared to be marijuana residue.  Enclosed as Exhibit D4 is an image of the backpack and its contents, including the loaded firearm (red arrow) and the scale (green arrow).  (See Ex. D4.)

<u>ARGUMENT</u>

I.     <u>NYPD OFFICERS LAWFULLY STOPPED THE MERCEDES ON THE BASIS OF A TRAFFIC INFRACTION – STOPPING OR STANDING ON A CROSSWALK</u>

    A.     <u>Applicable Law</u>

It is well established that "a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment." <u>United States v. Stewart</u>, 551 F.3d 187, 191 (2d Cir. 2009). Even when an officer does not witness an actual traffic violation, a stop is legal as long as the officer had reasonable suspicion of a traffic violation. <u>Id.</u> at 193 ("[A] mistake of fact [as to a traffic violation] does not undermine the existence of reasonable suspicion."). "A stop may also be valid even if the officer did not believe that he saw a traffic violation, as long as an objectively reasonable officer in his position would have suspected that a violation had occurred." <u>United States v. Stewart</u>, 604 F. Supp. 2d 676, 680–81 (S.D.N.Y. 2009) (citing <u>United States v. Harrell</u>, 268 F.3d 141, 149 (2d Cir. 2001)). Similarly, an officer's reasonable suspicion for a traffic stop can rest on a reasonable mistake of law. <u>Heien v. North Carolina</u>, 574 U.S. 54, 61 (2014). Moreover, the Second Circuit has long held that "an observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation." <u>United States v. Dhinsa</u>, 171 F.3d 721, 725 (2d Cir. 1998); <u>see also</u> <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996) (upholding pretextual traffic stop because courts do not "entertain Fourth Amendment challenges based on the actual motivations of the individual officers").

    B.     <u>Discussion</u>

Here, the undisputed evidence demonstrates that the officers had at least reasonable suspicion, if not probable cause, to believe that the defendant had committed a traffic infraction from the moment they first observed his Mercedes standing in the middle of a crosswalk. The defendant does not dispute that he stopped his vehicle on a pedestrian crosswalk,

stating only that, "It had been snowing, so [he] pulled over as close to the curb as [he] could."

(See Decl. of Kyle Balkissoon, ("Def.'s Decl.") ¶ 2.)  Yet, even if it were true that the defendant

could not have pulled closer to the curb, he committed a traffic infraction by stopping or standing

on the pedestrian crosswalk.

New York Vehicle and Traffic Law ("VTL") § 1202(a)1.d, provides that:

Except when necessary to avoid conflict with other traffic, or when
in compliance with law or the directions of a police officer or official
traffic-control device, no person shall: Stop, stand or park a
vehicle . . . On a cross walk.

The defendant does not dispute that his Mercedes was stopped or standing on a

crosswalk.  Nor does he aver facts supporting any of the exceptions to VTL § 1202(a)1.d's

prohibition, i.e., that blocking the crosswalk was (i) "necessary to avoid conflict with other

traffic" or (ii) "in compliance with law or the directions of a police officer or official

traffic-control device."  Therefore, even if the defendant's claims that he could not have pulled

closer to the curb and that there were no pedestrians present were true, blocking the crosswalk

was a violation of VTL § 1202(a)1.d.

Accordingly, having observed the Mercedes blocking the crosswalk, the officers

had reasonable suspicion, if not probable cause, to believe that the defendant was committing a

traffic infraction.  On these facts, their decision to approach and stop the Mercedes was lawful.

See Stewart, 551 F. 3d at 193 ("reasonable suspicion of a traffic violation provides a sufficient

basis under the Fourth Amendment for law enforcement officers to make a traffic stop.").

Moreover, even if the defendant had a lawful basis for blocking the pedestrian crosswalk, which

he did not, "a mistake of fact does not undermine the existence of reasonable suspicion."  Id.

(citing United States v. Jenkins, 452 F.3d 207, 212 (2d Cir. 2006) ("The constitutional validity of

a stop is not undermined simply because the officers who made the stop were mistaken about relevant facts.")).

Finally, the defendant seems to argue that the stop and subsequent search of the Mercedes were unlawful because the officers were motivated by their "knowledge of his prior conviction." (See Def.'s Mot. at 5.) However, even if the officers were aware of the defendant's criminal history and motivated to stop and search the Mercedes based on that knowledge, "the subjective motivation of the officers who made the stop is irrelevant; arguments 'that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved' are 'foreclose[d].'" United States v. Ojo, 630 F. App'x 83, 85 (2d Cir. 2015) (summary order) (citing Whren, 517 U.S. at 813; then citing Dhinsa, 171 F.3d at 724–25)). As the officers had reasonable suspicion to stop the Mercedes based on the traffic violation, the stop was lawful regardless of their motives. See Dhinsa, 171 F.3d at 724–25 ("[A]n an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."). Similarly, any motivation to search the Mercedes for a gun is irrelevant because, as explained below, the officers had probable cause to search the Mercedes's passenger compartment and the backpack on two independent grounds, each of which was sufficient to justify the search. See Whren, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

II.     THE OFFICERS' SEARCH OF THE MERCEDES WAS LAWFUL

As outlined below, the February 7, 2021 search of the defendant's Mercedes was legally permitted on two independent grounds—the search-incident-to-arrest-doctrine and the automobile exception to the Fourth Amendment warrant requirement—each of which is independently sufficient to justify the search.

A.      The Search Was Lawful Under the Search-Incident-to-Arrest-Doctrine

1.      Applicable Law

Probable cause to arrest "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). Law enforcement officers may make warrantless arrests even for minor infractions committed in the officer's presence. Atwater v. City of Lago Vista, 532 U.S. 318, 346-47, 355 (2001) (Fourth Amendment not violated by full arrest of driver for failure to fasten seatbelt).

The law is clear that officers may conduct a warrantless search of the passenger compartment of a vehicle incident to the arrest of a recent occupant of the vehicle. "The search-incident-to-arrest doctrine is an exception to the general requirement that an officer must obtain a judicial warrant supported by probable cause before conducting a search." United States v. Diaz, 854 F.3d 197, 205 (2d Cir. 2017). The purpose of the doctrine is two-fold: "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." Arizona v. Gant, 556 U.S. 332, 339 (2009). Thus, when an officer has probable cause to make an arrest, "[i]It makes no difference whether the search occurs before or after the arrest . . . so long as it is 'substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" Diaz, 854 F.3d at 205 (2d Cir. 2017) (citations omitted). Furthermore, the Second Circuit has held that an officer need not have formed the intent to make an arrest at the time the search is conducted. See id. at 208-09 (an officer made "a valid search incident to an arrest, despite the fact that she did not intend to arrest [the defendant] when she began the search.").

Police officers may search a vehicle incident to a recent occupant's arrest on two bases. First, officers may search the vehicle's passenger compartment "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Gant, 556 U.S. at 343. Second, "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle' . . . . officers may search the "passenger compartment of an arrestee's vehicle and any containers therein." Id. at 343-44 (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). Moreover, when there is a reasonable basis to believe that the vehicle contains evidence of the crime of arrest, it is lawful to conduct such a search "even after the arrestee has been secured and cannot access the interior of the vehicle." United States v. Gonzalez, 441 F. App'x 31, 34 (2d Cir. 2011).

2. Discussion

Based on the undisputed facts in this case, the officers had probable cause to stop and arrest the defendant on two independent bases and were therefore justified in searching the passenger compartment of the Mercedes, including the open backpack. Specifically, the officers had probable cause to arrest the defendant for the traffic violation and marijuana possession.

a. The Officers Had Probable Cause to Arrest the Defendant for Illegally Stopping in a Crosswalk

New York law provides that, "a police officer may arrest a person for . . . [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence," N.Y. Crim. Proc. Law § 140.10(1)(a), and further provides that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense," VTL § 155. See, e.g., United States v. White, 298 F. Supp. 3d 451, 458 & n.3 (E.D.N.Y. 2018) (holding that officers had probable cause to arrest defendant for parking within fifteen feet of fire hydrant). That

obstructing a crosswalk is only a minor offense is irrelevant, see Atwater, 532 U.S. at 346-47 (Fourth Amendment not violated by full arrest of driver for failure to fasten seatbelt), as are the officers' motives in making such an arrest, see Lee v. Sanberg, 136 F.3d 94, 103 n.5 (2d Cir. 1997).

For the reasons discussed above, the officers had probable cause to arrest the defendant for obstructing a pedestrian crosswalk in violation of VTL § 1202(a)1.d. See, e.g., United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994) (finding "probable cause to stop and arrest" the defendant where "officers directly observed him violating the traffic laws by not signaling lane changes").

    b.    The Officers Had Probable Cause to Arrest the Defendant for
          Illegally Possessing Marijuana

As the defendant concedes (see Def.'s Mot. at 6), on February 7, 2021, New York law classified the possession of marijuana as a violation punishable by a fine. See N.Y.P.L. § 221.05 (effective Aug. 28, 2019 to Mar. 30, 2021). Accordingly, on that date, a person could be arrested for possessing marijuana in New York. See N.Y. Crim. Proc. Law § 140.10 ("[A] police officer may arrest a person for: (a) Any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence[.]"); N.Y.P.L. § 10.00(1) (defining "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state"); N.Y.P.L. § 221.05 (effective Aug. 28, 2019 to Mar. 30, 2021) (providing for a sentence to a fine for possession of marijuana); United States v. Cuevas, No. 15-CR-846 (PKC), 2016 WL 2766657, at *4 (S.D.N.Y. May 12, 2016) (holding that there was probable cause to arrest for violation-quantity possession of marijuana).

The defendant does not dispute that there was a bag of marijuana in plain view on the Mercedes's center console as he sat alone in the driver seat on February 7, 2021. (See Def.'s

Mot. at 6; <u>see generally</u> Def.'s Decl.) While that fact alone established probable cause to believe that the defendant was in possession of marijuana, the other surrounding circumstances observed by the officers only confirmed that the defendant was about to smoke the marijuana when they approached his vehicle. Notably, officers smelled the odor of marijuana emanating from the vehicle's two open windows as they approached the car; they observed that the defendant had what appeared to be rolling papers on his lap and that the windows of his vehicle were open early in the morning on a cold winter's day; and when Officer Hassan stated that there was marijuana in the Mercedes, the defendant readily confirmed the obvious by stating that the bag contained marijuana.

Accordingly, on February 7, 2021, the officers had probable cause to arrest the defendant for possessing marijuana.

c. The Search Was Lawful Under *Gant*

Because the officers had probable cause to arrest the defendant both for the traffic infraction and for marijuana possession, they were permitted to search the passenger compartment of his Mercedes, including his open backpack, without a warrant for two separate and independently sufficient reasons. First, at the time of the search, the defendant was unsecured and within reaching distance of the Mercedes's passenger compartment, including the open backpack. <u>See</u> <u>Gant</u>, 556 U.S. at 343. In fact, when the defendant fled, he ran up to and past the Mercedes's open rear passenger door which was the exact location where the gun was located in the open backpack. As shown in the body camera video provided as exhibits to this opposition, the defendant could easily have attempted to grab the gun from the backpack as he fled.

Second, even if the defendant were not within reaching distance of the passenger compartment, because the officers had probable cause to arrest the defendant for marijuana

possession they could lawfully search the "passenger compartment of [the defendant's] vehicle and any containers therein" for evidence of the defendant's possession of marijuana.  Id. at 343-44.  Having already found marijuana in plain view in the center console of the vehicle, the defendant's open backpack in the back seat was an obvious place to look for more marijuana or other evidence of the defendant's possession of marijuana.  See e.g., United States v. Faison, No. 15-CR-186, 2015 WL 5915964, at *7 (S.D.N.Y. Oct. 8, 2015) (search of passenger compartment and any containers therein for marijuana was reasonable incident to arrest for marijuana possession, where arrest was based on "(1) the strong odor of marijuana emanating from [the] vehicle; (2) [the officer's] observation of a marijuana cigarette on the center console of the vehicle; and (3) [the defendant's] behavior when officers directed him to get out of the vehicle").  Indeed, the backpack was later found to contain a portable digital scale on which there appeared to be marijuana residue.

Accordingly, the undisputed facts demonstrate that the officers had probable cause to arrest the defendant for two distinct offenses, and thus, that their search of the Mercedes and the backpack for marijuana was therefore lawful under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement.

B.    The Search was Also Lawful Under the Automobile Exception to the Warrant Requirement

1.    Applicable Law

It is well settled that "[u]nder the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime."  United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004).  The automobile exception has long been recognized because, as a matter of constitutional law, "an

individual's expectation of privacy in an automobile is significantly lower than his expectation of privacy in a residence." United States v. Smith, 621 F.2d 483, 488 (2d Cir. 1980). In Rakas v. Illinois, 439 U.S. 128, 148 (1978), the Supreme Court observed that "[w]e have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes." In his concurring opinion in Rakas, Justice Powell explained the rationale behind the distinction:

> Automobiles operate on public streets; they are serviced in public places; they stop frequently; they are usually parked in public places; their interiors are highly visible; and they are subject to extensive regulation and inspection.

Id. at 154.

As the Second Circuit has since reiterated, "[u]nder the 'automobile' exception to the warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." United States v. Wilson, 699 F.3d 235, 245 (2d Cir. 2012). Moreover, in United States v. Ross, 456 U.S. 798, 825 (1982), the Supreme Court found that when a warrantless search of a vehicle is justified, it also extends to the closed containers therein, holding that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." See also California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."); United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (the permissible scope of a vehicle search pursuant to the automobile exception "[include[es] all containers and packages] that may conceal the object of the search" (internal quotation marks and citations omitted)); cf. Gant, 556 U.S. at 347 (observing that when probable cause exists "to believe a vehicle contains evidence of criminal

activity . . . . the scope of the search authorized is broader" than what is permitted incident to an arrest). !

2.      <u>Discussion</u>

In this case, the officers (i) smelled marijuana emanating from the Mercedes, (ii) observed the defendant alone in the Mercedes with rolling papers on his lap as he sat with the front windows open despite the cold temperature, and (iii) observed the defendant in possession of what appeared to be (and would later prove to be) a bag of marijuana.  The defendant also confirmed that the bag contained marijuana by stating in sum and substance, "this is all the marijuana I have."  The defendant's declaration does not dispute any of these facts.  (<u>See generally</u> Def.'s Decl.)  Although the defendant claims he "was not smoking marijuana" in the Mercedes and that "[t]here was no loose, burning, or burnt marijuana in [the Mercedes,]" he does not deny that the Mercedes smelled of marijuana, nor that the Mercedes contained raw and/or packaged marijuana.  Nor does the defendant deny that he responded, "No problem," when Officer Hassan asked the defendant to step out of the Mercedes "because there's weed in the car."  (<u>See</u> Ex. C at 01:24:58–01:25:20.)  These undisputed facts afforded the officers probable cause to search the Mercedes's passenger compartment for marijuana.  <u>See</u> <u>Navas</u>, 597 F.3d at 497 (the automobile exception "permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband").

The defendant argues that the officers lacked probable cause to search the backpack based solely on their plain-view observation of a bag of marijuana in the center console of the Mercedes and the odor of marijuana emanating from the car.  (<u>See</u> Def.'s Mot. at 5-7.)  Arguing that such facts and circumstances are insufficient to establish probable cause to search the defendant's backpack, the defendant relies on a New York State court decision which

held that "the odor of marijuana, together with a de minimis amount of marijuana found in the center console of the vehicle, did not furnish the requisite probable cause to search the trunk of defendant's vehicle." (Id. at 6 (quoting People v. Ponder, 146 N.Y.S.3d 628, 630 (1st Dep't 2021) (emphasis added).)

First, Ponder is distinguishable on its facts because the officers in this case did not search the trunk of the Mercedes. Rather, they searched the same passenger compartment in which they observed a package of marijuana in plain view, and from which they smelled the odor of marijuana. Having already recovered contraband from the passenger compartment, it was certainly reasonable for the officers to search the rest of the passenger compartment for more. Though the defendant argues that the search of the defendant's open backpack on the seat immediately behind him is not "meaningfully different" from the search of a trunk (Def.'s Mot. at 7), there is no practical comparison between a readily accessible and open bag in the backseat of a car and the closed door of a trunk inaccessible to a vehicle's occupants. In any event, the law that binds this Court is clear that the permissible scope of a search pursuant to the automobile exception "include[es] all containers and packages that may conceal the object of the search." Navas, 597 F.3d at 497 (internal quotation marks and citations omitted)). Pursuant to the automobile exception, the officers were therefore permitted to search any containers within the Mercedes "that may [have concealed] the object of the search." See Ross, 456 U.S. at 825 (1982); Acevedo, 500 U.S. at 579. Thus, the officers were permitted to search the open backpack, which was within arm's reach of the defendant as he sat in the Mercedes with rolling papers on his lap. See United States v. Colon, No. 10-CR-498 (RPP), 2011 WL 569874, at *12 (S.D.N.Y. Feb. 8, 2011) (denying suppression of firearm where officers' detection of marijuana odor justified search of vehicle, including the glove compartment where a firearm was found).

Second, to the extent that <u>Ponder</u> purports to impose a special New York State rule that probable cause for a warrantless search under the automobile exception is not satisfied by the tell-tale odor of marijuana and a "de minimis" quantity of the contraband, federal law is to the contrary. Probable cause is a "fluid" standard requiring not "hard certainties," but only "a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 231–32, 238 (1983) (internal quotation marks omitted); <u>see</u> <u>Florida v. Harris</u>, 568 U.S. 237, 244 (2013) (observing that probable cause is a "practical," "common-sensical," "all-things-considered" standard). A probability determination focuses on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949), thus it is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." <u>Gates</u>, 462 U.S. at 232. Federal courts have regularly found that the odor of marijuana is alone sufficient to establish probable cause to search a vehicle under the automobile exception. <u>See, e.g.</u>, <u>United States v. Jackson</u>, 652 F.2d 244, 252 n.6 (2d Cir. 1981) (odor of marijuana can give rise to probable cause to search a car); <u>United States v. Garcia</u>, No. 18-CR-178 (AT), 2018 WL 3407707, at *4 (S.D.N.Y. June 5, 2018) (holding that odor of marijuana "provided an 'objective basis for suspecting legal wrongdoing'"); <u>Faison</u>, 2015 WL 5915964, at *5 (same); <u>United States v. Mosquera</u>, No. 07-CR-140 (DLI), 2013 WL 2396213, at *12 (E.D.N.Y. May 31, 2013) (same); <u>Colon</u>, 2011 WL 569874, at *12 (same). Indeed, the fact that the officers recovered marijuana from the Mercedes, even in a small quantity, "simply lends credibility" to their indications that they smelled the odor of marijuana emanating from the vehicle. <u>Colon</u>, 2011 WL 569874, at *12 ("Upon encountering the suspicious smell [of raw marijuana, the officers] . . . . had probable cause to believe

the vehicle contained contraband, and therefore the search was not a violation of the Defendant's constitutional rights under the automobile exception to the warrant requirement.").

The defendant's conclusory assertion that "[o]n the date of Balkissoon's stop and search, 1.67 grams of marijuana was not contraband" is also wrong. (Def.'s Mot. at 7.) On February 7, 2021, the marijuana recovered from the center console of the defendant's Mercedes was indeed contraband, as it was unlawful to possess at the time of the search. See Colon, 2011 WL 569874, at *12 (holding that a violation quantity of marijuana was unlawful to possess under New York law and was therefore a "form of contraband"); see also United States v. Pierce, 224 F.3d 158, 166–67 (2d Cir. 2000) (defining contraband as "'illegal or prohibited traffic' or 'goods or merchandise the importation, exportation, or sometimes possession of which is forbidden.'" (quoting Webster's Third New International Dictionary 494 (1981))); CONTRABAND, Black's Law Dictionary (11th ed. 2019) ("1. Illegal or prohibited trade; smuggling. 2. Goods that are unlawful to import, export, produce, or possess."). As detailed above, the defendant's possession of marijuana on February 7, 2021, was a violation of New York law for which he was subject to arrest, and therefore the drug itself was contraband.

Accordingly, the undisputed facts demonstrate that the officers' search of the Mercedes and the backpack for marijuana was supported by probable cause and was therefore lawful under the automobile exception to the Fourth Amendment's warrant requirement.

III.     THE DEFENDANT'S MOTION TO SUPRESS STATEMENTS HE MADE TO OFFICER MODESTO WHILE STANDING BEHIND THE MERCEDES IS MOOT

   A.     Applicable Law

A person must be advised of certain rights before being subject to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444 (1966). In order for the warnings to be required, the Court must find both that: (1) there was an interrogation of the defendant, and

(2) the interrogation was while the defendant was in "custody." United States v. FNU LNU, 653 F.3d 144, 148 (2d Cir. 2011). On a motion to suppress, "the defendant bears the burden of demonstrating the basis for the motion—in this case, that he was subject to custodial interrogation." United States v. Carr, 63 F. Supp. 3d 226, 235 (E.D.N.Y. 2014) (citing cases).

The issue of "custody" involves a two-prong, objective inquiry. The first question is whether "a reasonable person would have thought he was free to leave the police encounter." United States v. Newton, 369 F.3d 659, 672 (2d Cir. 2004) (internal quotation marks omitted). "If the answer is yes, the Miranda inquiry is at an end; the challenged interrogation did not require advice of rights." Id. If the answer is no, "the 'ultimate inquiry' for determining Miranda custody . . . [is] whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Id. at 670. Thus, an interrogation might be deemed to have occurred in a "coercive environment"—one where a reasonable person might not have felt free to leave—but that fact, by itself, would not trigger the need for the Miranda warnings. Id. at 671.

In Berkemer v. McCarty, 468 U.S. 420 (1984), the Supreme Court applied these principles to the context of a roadside traffic stop, concluding that "[t]he roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute 'custodial interrogation' for the purposes of [Miranda]." The Court noted that "[t]wo features of an ordinary traffic stop mitigate the danger that a person questioned will be induced 'to speak where he would not otherwise do so freely' . . . . First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief . . . . Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police." Id. at 437-38 (citation omitted). Thus, the court held that, in light of the "noncoercive aspect of ordinary

traffic stops . . . persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Id. at 440.

B.     <u>Discussion</u>

The defendant does not move to suppress all of the statements he made to the officers who stopped him and later arrested him on February 7, 2021. The defendant contends only that statements he made <u>while standing behind the rear of the Mercedes</u> were the result of an unconstitutional custodial interrogation. (<u>See</u> Def.'s Mot. at 3-4, 7-8.) Specifically, the defendant notes that he stated: (1) "I got locked up for a charge I did when I was younger, and that was it," (2) "I was locked up with a bunch of people, they found it on somebody else's person," and (3) "I'm just trying to wonder like, why you all . . . [.]" (<u>Id.</u> at 3-4.) The government does not intend to offer these specific statements against the defendant in its case in chief at trial. The defendant's motion as to the defendant's statements should therefore be denied as moot. <u>See</u> <u>United States v. Simmons</u>, 351 F. Supp 3d 214, 222 (E.D.N.Y. 2018) (denying as moot, portion of defendant's motion to suppress statements the government did not seek to introduce at trial).

Notably, the defendant's motion does not seek suppression of the other statements he made to officers before he was standing at the rear of the Mercedes, including, (i) in sum and substance, "this is all the marijuana I have"; and (ii) "No problem," which was his response when asked to step out of the Mercedes because it contained marijuana. Nor could he; the law is clear that a motorist is not in custody during a traffic stop, and thus his statements before he was standing at the rear of the vehicle were not even arguably subject to suppression as the product of unwarned interrogation in violation of <u>Miranda</u>. <u>See, e.g.,</u> <u>United States v. Legree</u>, 375 F. Supp. 3d 222, 231 (E.D.N.Y. 2019) (denying motion to suppress statements made during stop because the "encounter was not custodial").

IV.    THE COURT SHOULD DENY THE MOTION WITHOUT A HEARING

    A.    Applicable Law

    A defendant has no absolute right to an evidentiary hearing on a motion to suppress evidence.  See In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 157, 165 (2d Cir. 2008) ("[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." (internal quotation marks and citation omitted)).  A material factual dispute must exist for a hearing to be justified.  See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (holding that suppression hearing is available only if there is a "factual issue to be resolved"); United States v. Aparo, 221 F. Supp. 2d 359, 369 (E.D.N.Y. 2002) (denying suppression motion where defendant failed to submit an affidavit alleging facts which, if proven at a hearing, would necessitate suppression).  "If the defendant's request for a hearing is not accompanied by a sufficient 'specification of the factual basis for the characterization, the district court is not required to have a hearing.'"  United States v. Spencer, No. 06-CR-413 (DLI), 2016 WL 6781225, at *5 (E.D.N.Y. Nov. 15, 2016) (quoting United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (per curiam) (alteration omitted)); see also Cameron v. Smith, No. 11-CV-5100 (BMC), 2012 WL 1004893, at *3-4 (E.D.N.Y. Mar. 23, 2012) ("[W]hen a defendant does not challenge [the basis for a search or seizure] except with a conclusory assertion by his attorney . . . , no evidentiary hearing is required.").

    It is not enough simply to attach an affidavit to moving papers; the defendant must assert facts which, taken as true, would merit the suppression of the challenged evidence. See United States v. Chandler, 164 F. Supp. 3d 368, 376 (E.D.N.Y. 2016) ("[I]f facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no

evidentiary hearing is required.") (quotation marks and citation omitted); <u>see also</u> <u>United States v. Townsend</u>, No. 15-CR-653 (DLI), 2016 WL 3562055, at *2 (E.D.N.Y. June 23, 2016).

B.    <u>Discussion</u>

The defendant claims that "[b]ecause the officers opted not to record the stop of the vehicle, they lack evidence as to how it came to be there, what questions they asked of Balkissoon, and how he answered, requiring fact-finding at an evidentiary hearing." (Def.'s Mot. at 5.) The defendant is wrong; there is no material factual dispute that the Court must resolve to decide the legality of the stop and search of the Mercedes.

With respect to the stop, the defendant does not dispute the video evidence that he stopped the Mercedes in a pedestrian crosswalk. (Def.'s Decl. ¶ 2.) Rather, he states that, "It had been snowing, so [he] pulled over as close to the curb as [he] could." (<u>Id.</u>) Since the defendant neither disputes that he stopped the vehicle on the crosswalk in violation of New York law, nor avers any fact which would make doing so lawful, there is no need for any hearing regarding the legality of the stop.

As for Officer Hassan's and Martinez's search of the Mercedes, as outlined above, the search was authorized on two independent grounds, each of which is sufficient to justify the search. Because there is no dispute that the defendant's vehicle was unlawfully stopped in the crosswalk, and because there is no dispute that the officers observed marijuana in plain view and smelled marijuana emanating from the vehicle, there is no factual dispute affecting this Court's determination whether the officers had probable cause to arrest the defendant and conduct a search incident to arrest. Thus, the Court can—and should—find that the search was justified without a hearing.

In addition, with regard to the automobile exception, the defendant states that he "was not smoking marijuana in [the Mercedes]" and that "[t]here was no loose, burning, or burnt

marijuana in [the Mercedes]" (Id. ¶ 3.)  However, the defendant does not dispute that the officers

smelled the odor of marijuana emanating from the Mercedes.  Nor does the defendant dispute

that they observed rolling papers on his lap, that his front windows were open on a cold February

morning, or that they observed a bag of marijuana in the center console.  Thus, for these

additional reasons, the defendant's affidavit fails to "demonstrate the existence of disputed

material facts regarding the legality of the search." United States v. Mottley, 130 F. App'x. 508,

509 (2d Cir. 2005) (affirming denial of request for a suppression hearing where issues of

contested fact in defendant's affidavit were not material to legality of search at issue).

      Accordingly, because the Court can resolve this motion based on undisputed facts

in the record, no hearing is needed. See United States v. Miller, No. 18-CR-395 (NGG), 2019

WL 2088248, at *4 (E.D.N.Y. May 13, 2019) ("Without some concrete evidence indicating that

the court should doubt whether the officer smelled marijuana, a suppression hearing is

inappropriate.") (citing Garcia, 2018 WL 3407707, at *4 ("Defendant does not provide any

support, however, for its assertion that police could not smell less than two grams of marijuana,

and the Court does not find the argument persuasive.  Nor is there an affidavit from someone

with personal knowledge denying that the car smelled like marijuana.  As a result, this issue is

not sufficiently disputed, and the Court finds that police had reasonable suspicion.")).

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that the

defendant's motion to suppress should be denied in its entirety without a hearing.

Dated:     Brooklyn, New York
           August 23, 2021

                              Respectfully submitted,


                              JACQUELYN M. KASULIS
                              Acting United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


                         By:  /s/ Garen S. Marshall
                              Garen S. Marshall
                              Assistant United States Attorney
                              (718) 254-6569