ICR:GSM
F. #2021R00231

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                                    Docket No. <u>21-CR-186 (EK)</u>

KYLE BALKISSOON,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>THE GOVERNMENT'S SECOND MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS</u>

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Garen S. Marshall
Assistant U.S. Attorney
    (Of Counsel)

Date of Service: November 17, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTS ............................................................................................................... 1

ARGUMENT...................................................................................................... 7

I.   THE STOP WAS LAWFUL ...................................................................... 8

   A. Applicable Law ..................................................................................... 8

   B. The Officers' Testimony Was Consistent and Credible and Established that the Officers had Reasonable Suspicion, if Not Probable Cause, to Stop the Defendant .... 9

II.  THE SEARCH WAS LAWFUL .............................................................. 13

   A. The Search was Lawful Under the Automobile Exception to the Warrant Requirement ........................................................................................ 13

      1. Applicable Law .............................................................................. 13

      2. Discussion...................................................................................... 15

   B. The Search was Also Lawful Under the Search-Incident-to-Arrest Doctrine ........... 22

      1. Applicable Law .............................................................................. 22

      2. Discussion...................................................................................... 23

         a. The Officers Had Probable Cause to Arrest the Defendant for Illegally Stopping in a Crosswalk and for Illegally Possessing Marijuana ................... 23

         b. The Officers Were Permitted to Search the Mercedes's Passenger Compartment, Including the Backpack, Incident to Arrest ............................. 27

III. THE SUBJECTIVE INTENT OF THE OFFICERS IS IRRELEVANT ......................... 30

CONCLUSION.................................................................................................. 33

Page(s)

**Cases**

Arizona v. Gant,
    556 U.S. 332 (2009)........................................................................................ passim
Atwater v. City of Lago Vista,
    532 U.S. 318 (2001)............................................................................. 22, 24, 26
Black Jack Distributors, Inc. v. Beame,
    433 F. Supp. 1297 (S.D.N.Y. 1977) ............................................................ 25
Bond v. United States,
    529 U.S. 334 (2000)....................................................................................... 31
Brigham City v. Stuart,
    547 U.S. 398 (2006)....................................................................................... 31
California v. Acevedo,
    500 U.S. 565 (1991)....................................................................................... 14
Chimel v. California,
    395 U.S. 752 (1969)....................................................................................... 28
Fernandez v. City of New York,
    No. 19CV1862 (DLC), 2020 WL 4266931 (S.D.N.Y. July 24, 2020).................... 11
Heien v. North Carolina,
    574 U.S. 54 (2014)............................................................................................ 8
Johnson v. City of New York,
    No. 18-CV-6256 (RA), 2020 WL 2732068 (S.D.N.Y. May 26, 2020) ...................... 19, 20, 29
Kee v. City of New York,
    12 F.4th 150 (2d Cir. 2021) ........................................................................... 26
Lee v. Sanberg,
    136 F.3d 94 (2d Cir. 1997) ............................................................................ 24
Navarette v. California,
    572 U.S. 393 (2014)....................................................................................... 11
Rakas v. Illinois,
    439 U.S. 128 (1978)................................................................................. 13, 14
Thornton v. United States,
    541 U.S. 615 (2004)....................................................................................... 23
Torres v. Madrid,
    141 S. Ct. 989 (2021)..................................................................................... 26
United States v. Abreu,
No. 20-CR-0052 (DLC), 2021 WL 50867 (S.D.N.Y. Jan. 6, 2021)...................... 21, 30
United States v. Carter,
    173 F. App'x 79 (2d Cir. 2006) .............................................................. 16, 18, 20
United States v. Colon,
    No. 10 CR. 498 RPP, 2011 WL 569874 (S.D.N.Y. Feb. 8, 2011) .................... 16, 20
United States v. Cuevas,
    No. 15-CR-846 (PKC), 2016 WL 2766657 (S.D.N.Y. May 12, 2016)............... 18, 24

United States v. Cushnie,
    No. 14-CR-119 (PGG), 2014 WL 7447149 (S.D.N.Y. Dec. 31, 2014)...................................28

United States v. Daniels,
    No. 21-CR-81 (KAM), 2021 WL 4690837 (E.D.N.Y. Oct. 7, 2021).........................12, 16, 26

United States v. Delille,
    No. 2:15-CR-88, 2016 WL 236464, (D. Vt. Jan. 19, 2016) ...................................................18

United States v. Dhinsa,
    171 F.3d 721 (2d Cir. 1998) ..........................................................................................9, 31

United States v. Diaz,
    854 F.3d 197 (2d Cir. 2017) ........................................................................................22, 32

United States v. Dupree,
    767 F. App'x 181, 183 (2d Cir. 2019) ....................................................................................32

United States v. Faison,
    No. 15-CR-186 (PGG), 2015 WL 5915964 (S.D.N.Y. Oct. 8, 2015) ...............................18, 29

United States v. Fisher,
    702 F.2d 372 (2d Cir. 1983) ................................................................................................22

United States v. Garcia,
    No. 18 CR. 178 (AT), 2018 WL 3407707 (S.D.N.Y. June 5, 2018) ......................................24

United States v. Gaskin,
    364 F.3d 438 (2d Cir. 2004) ................................................................................................13

United States v. Gonzalez,
    441 F. App'x 31 (2d Cir. 2011) .............................................................................................23

United States v. Goolsby,
    820 F. App'x 47 (2d Cir. 2020) .............................................................................................16

United States v. Harrell,
    268 F.3d 141 (2d Cir. 2001) ..................................................................................................8

United States v. Jenkins,
    452 F.3d 207 (2d Cir. 2006) ................................................................................................12

United States v. Klump,
    536 F.3d 113 (2d Cir. 2008) ................................................................................................32

United States v. Loucks,
    806 F.2d 208 (10th Cir. 1986) ............................................................................................18

United States v. Navas,
    597 F.3d 492 (2d Cir. 2010) ..........................................................................................14, 19

United States v. Ojo,
    630 F. App'x 83 (2d Cir. 2015) .............................................................................................31

United States v. Pascual,
    502 F. App'x 75 (2d Cir. 2012) ................................................................................16, 20, 30

United States v. Pena,
    351 F. Supp. 3d 723 (S.D.N.Y. 2019) ..................................................................................26

United States v. Pierce,
    224 F.3d 158 (2d Cir. 2000) ................................................................................................21

United States v. Ross,
    456 U.S. 798 (1982)................................................................................................14, 16, 20

United States v. Shaw,
    260 F. Supp. 2d 567 (E.D.N.Y. 2003) ...................................................................................9

United States v. Smith,
   621 F.2d 483 (2d Cir. 1980) ........................................................................ 13

United States v. Stewart,
   551 F.3d 187 (2d Cir. 2009) ................................................................... 8, 11

United States v. Stewart,
   604 F. Supp. 2d 676 (S.D.N.Y. 2009) ........................................................ 8

United States v. Vereen,
   No. 20-CR-566 (RA), 2021 WL 3771989 (S.D.N.Y. Aug. 23, 2021)......................... 17, 19, 21

United States v. Watson,
   No. 20-CR-346 (JSR), 2021 WL 535807 (S.D.N.Y. Feb. 11, 2021)....................................... 12

United States v. Weaver,
   9 F.4th 129 (2d Cir. 2021) ......................................................................... 11

United States v. White,
   298 F. Supp. 3d 451 (E.D.N.Y. 2018) ...................................................... 24

United States v. Wilson,
   699 F.3d 235 (2d Cir. 2012) ...................................................................... 14

Vyrkin v. Triboro Bridge & Tunnel Auth.,
   No. 18-CV-12106 (JGK), 2021 WL 797654 (S.D.N.Y. Mar. 2, 2021) ................................... 26

Whren v. United States,
   517 U.S. 806 (1996)............................................................................. 9, 31

Zarkower v. City of New York,
   461 F. Supp. 3d 31 (E.D.N.Y. 2020) ........................................................ 25

## Statutes and Regulations

N.Y.C.P.L § 150.20 ................................................................................... 26

N.Y.C.P.L. § 140 .............................................................................. 25, 26

N.Y.C.P.L. § 140.10 .................................................................................. 24

N.Y.C.P.L. § 140.10(1)(a) ......................................................................... 23

N.Y.C.P.L. § 150.10 .................................................................................. 25

N.Y.P.L. § 10.00(1) ................................................................................... 24

N.Y.P.L. § 221.05 ...................................................................................... 24

N.Y.V.T.L. § 1202(a)1.d........................................................................ 9, 11, 23

N.Y.V.T.L. § 155 ....................................................................................... 24

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendant's motion to suppress evidence seized from the defendant's vehicle on February 7, 2021, in the above-referenced case and in response to the defendant's October 28, 2021 post-hearing brief. (Dkt. No. 23 ("Def.'s Br.")). For the reasons discussed below, the government respectfully submits that the Court should find that the police officers who stopped the defendant on February 7, 2021, had probable cause, or at least reasonable suspicion, to stop the defendant, and were justified in searching the passenger compartment of the defendant's vehicle without a warrant, including the backpack on the back seat, under both the automobile exception to the warrant requirement and the search-incident-to-arrest doctrine.

## FACTS

On October 6, 2021, the Court held an evidentiary hearing at which it received testimony from Police Officers Fabian Modesto, Haroonul Hassan, and Julio Martinez of the New York City Police Department ("NYPD"), and was presented documentary, physical and video evidence. The defendant chose not to testify. The evidence provided to the Court established the following facts, in sum and substance:

In the early morning hours of February 7, 2021, Officers Modesto, Hassan, and Martinez, together with three other officers, were on patrol, in uniform, in two unmarked cars in the vicinity of East 34th Street and Cortelyou Road in Brooklyn, New York, within the 67th Police Precinct. (Tr. 21:1-23:9, 103:22-104:11). Officers Modesto, Hassan, and Martinez are members of the 67th Precinct's public safety squad. (Tr. 19:9-20, 102:1-14, 188:5-16). Officer Modesto has been a police officer with the NYPD for approximately ten years; Hassan has been with the NYPD for approximately four years; and Officer Martinez has worked for the NYPD for approximately six years. (Tr. 19:9-11, 102:5-6, 188:9-10). All three officers have been

involved in numerous car stops and in numerous arrests involving marijuana, and have received related training. (Tr. 20:10-25, 102:18-103:7, 188:17-189:6).

At approximately 1:15 a.m. on February 7, 2021, the lead patrol vehicle, containing Officers Modesto, Martinez, and Blum; followed directly by the second patrol vehicle, containing Officer Hassan and two other officers; approached the intersection of Cortelyou Road and East 34th Street while traveling southbound on East 34th Street. (Tr. 21:18-23, 22:3-23:16, 103:22-104:19). As they approached the intersection, Officers Modesto, Martinez, and Hassan observed a 2015 black Mercedes-Benz E350 sedan (the "Mercedes") standing diagonally in the middle of a pedestrian crosswalk with its engine running. (Tr. 24:7-14, 32:6-11, 104:22-105:6, 189:21-190:17). Notably, the Mercedes, which was obstructing the crosswalk at the time the officers arrived at the intersection, was not moved at any point during the ensuing stop and search of the Mercedes. (Tr. 32:6-11, 35:1-10, 48:23-49:13, 108:1-17, 132:18-22, 189:21-190:17, 193:3-13; see Tr. 33:25-35:10 (Officer Modesto referencing Government Exhibit 2, to describe the Mercedes's location—obstructing a crosswalk—when the officers arrived at the intersection); see also Gov. Ex. 4 (depicting the Mercedes in the same location as it was when the officers arrived at the intersection); cf. Decl. of Kyle Balkissoon, ("Def.'s Decl.") ¶¶ 2, 4 ("At around 1:20 AM on February 7, 2021, I drove my car to my girlfriend's house. I pulled over at the corner of Cortelyou Road and East 34th Street, in Brooklyn, where she lives. It had been snowing, so I pulled over as close to the curb as I could . . . . While I was parked, police officers approached my car.")).

Officer Modesto drove the lead vehicle "right up next to the Mercedes" so that the Mercedes was to the left of, and parallel with, Modesto's vehicle. (Tr. 24:17-25:13). From his position in the driver's seat, Officer Modesto could see directly into the passenger compartment

of the Mercedes, which was less than five feet away. (Tr. 25:7-21 ("I was like right next to it.")). From that position, Officer Modesto observed an individual, later identified as the defendant, seated alone in the Mercedes's driver's seat "with his head down and with his hands in front of him." (Tr. 25:22-26:14). Officer Modesto then sat up higher in his seat and observed the defendant holding rolling paper. (Tr. 26:1-4, 39:5-20). In addition, the driver's window on Officer Modesto's vehicle, as well as the Mercedes's front windows, were open, (Tr. 23:19-23, 41:19-21, 42:11-43:2, 106:4-12, 192:7-11), and Officer Modesto could smell a slight odor of marijuana, which he believed to be coming from the Mercedes (Tr. 41:7-42:5). Based on these observations, Officer Modesto, who had previously been involved in numerous marijuana arrests and had received training from the NYPD related to marijuana, believed that the defendant was rolling a marijuana cigarette. (Tr. 20:15-25, 25:22-26:4, 68:19-69:20). Officer Modesto then pulled the lead vehicle further onto Cortelyou Road, directly in front of the Mercedes, (Tr. 29:16-22, 36:17-22), and had Officer Martinez relay to the officers in the second vehicle, in sum and substance, that they would all exit the police vehicles and approach the Mercedes. (Tr. 38:20-39:2, 40:24-41:6, 105:8-11, 145:2-3).

The officers thereafter exited the vehicles, and Officers Hassan and Martinez approached the Mercedes from its driver and passenger sides, respectively. (Tr. 39:22-40:8, 105:13-14, 191:1-3, 192:7-11; see also Gov. Ex. 4 (depicting Officers Hassan and Martinez during the stop at 01:24:53)). As Officers Hassan and Martinez initially approached the Mercedes, which had its front windows open despite the cold temperature, (Tr. 42:11-43:2, 106:4-12, 192:7-11), they noticed an odor of marijuana coming from the Mercedes. (Tr. 106:13-15, 107:11-17, 118:15-19, 192:18-193:2). In addition, they observed the defendant sitting alone in the vehicle with a large brown fronto leaf rolling paper on his lap, (Tr. 106:13-107:1, 117:8-

20, 184:15-185:6, 191:4-192:3), and they also saw, in the car's center console, what appeared to be a small bag of marijuana and a plastic cup. (Tr. 107:2-10; 191:4-9, 192:12-17; Gov. Ex. 9-10, 12, 17). From the passenger side, Officer Martinez was also able to see that the plastic cup in the center console contained ashes, and he also saw a ziplock bag in the center console. (Tr. 192:12-17).

When Officer Hassan approached the driver's door, he asked the defendant for his license and registration and, in sum and substance, indicated to the defendant that he smelled marijuana coming from the Mercedes. (Tr. 113:20-114:3). In response, the defendant lifted a small bag from the center console of his vehicle and said, in sum and substance, that the bag was all the marijuana he had. (Tr. 113:22-114:3). Despite the defendant's claim, Officer Hassan was aware from his experience that, when he sees drugs in a car, there are often more drugs in the car, and that people who have drugs in their car often lie to him during a vehicle stop. (Tr. 183:4-10).

By this point in their encounter with the defendant, Officers Modesto, Hassan, and Martinez had smelled the odor of marijuana emanating from the Mercedes, which had its front windows open, and had observed the rolling papers on the defendant's lap. Officers Hassan and Modesto had also seen the bag of marijuana in the Mercedes's center console; Officer Hassan heard the defendant himself confirm that there was marijuana in the Mercedes; and Officer Martinez had seen ashes in the cup in the car's center console. In addition, although Officers Modesto, Hassan, and Martinez knew that the odor of marijuana was coming from the Mercedes, it was unclear whether the smell was coming solely from the bag in the center console or from elsewhere in the passenger compartment. (Tr. 86:11-87:1, 118:15-19, 121:10-14; 192:18-24). Thus, Officer Hassan asked the defendant to step out of the Mercedes, stating to the

defendant "because there's weed in the car." (Tr. 114:6-10; Gov. Ex. 8 at 01:24:58–01:25:03). The defendant responded, "No problem" and stepped out of the Mercedes. (Gov. Ex. 8 at 01:25:03–01:25:20). Officer Hassan briefly patted the defendant down before directing him to step behind the rear of the Mercedes with Officer Modesto. (Tr. 114:6-10; Gov. Ex. 8 at 01:25:21–01:25:58).

Officers Hassan and Martinez began to search the Mercedes's passenger compartment immediately after Officer Hassan finished patting down the defendant, and before the defendant had stepped past the Mercedes's passenger compartment to the rear of the vehicle—Hassan searching the driver's side and Martinez searching the passenger side. (See Gov. Exs. 3, 8 and 16 at 01:25:57 (depicting Officer Martinez opening the Mercedes's front passenger door to begin the search as the defendant stood next to the rear passenger door's open window)). Separately, once the defendant stepped to the rear of the Mercedes, he spoke with Officer Modesto about a previous firearm arrest. (Tr. 45:15-20; Gov. Ex. 3 at 01:25:58-01:26:44). Officer Modesto had learned of the defendant's previous arrest via an iPhone application before the defendant stepped out of the Mercedes, though Officer Modesto did not relay that information to Officers Hassan and Martinez. (Tr. 46:20-25, 47:5-9; 48:10-16, 75:23-76:8). As he spoke with the defendant, Officer Modesto attempted to keep the defendant's attention away from the Mercedes, and the ongoing search of the passenger compartment, for safety purposes. (Tr. 45:15-46:19). Officer Modesto "noticed that [the defendant] was a little nervous" and "that he kept looking forward at what Officer Martinez was doing." (Tr. 46:1-47:13; Gov. Ex. 3 at 01:25:58-01:27:01; Gov. Ex. 6). Officer Martinez, who was searching the passenger side of the Mercedes, also noticed that the defendant was watching him conduct the search. (Tr. 197:25-198:4).

Following a brief search of the front of the Mercedes's passenger compartment—where Officers Hassan and Martinez observed the fronto leaf rolling paper, a ziplock bag containing rolling paper stems, a plastic cup containing ashes, and a bag of marijuana—Officers Hassan and Martinez began to search the back seat of the passenger compartment for additional marijuana or paraphernalia.  (Tr. 128:12-129:2; 195:23-197:9; Gov. Exs. 8 and 16 at 01:25:55–01:26:55).  As shown in Officer Modesto's body camera video from just before the search began, an open backpack was positioned on the rear seat of the Mercedes within arm's reach of the driver's seat.  (See Gov. Ex. 5 (yellow arrow)).

While searching the rear passenger side of the Mercedes's passenger compartment, Officer Martinez shifted the contents of the open backpack, removed a bottle of Febreze,[1] and observed the butt of a gun.  (Tr. 197:11-16; Gov. Ex. 16 at 01:26:50-01:27:01).  Meanwhile, as the defendant stood just behind the Mercedes, he repeatedly attempted to look in Officer Martinez's direction as Officer Martinez moved closer to the backpack.  (Tr. 47:1-11; Gov. Ex. 3 at 01:26:00-01:27:01; Gov. Ex. 6 (depicting the defendant (red arrow) looking in the direction of Officer Martinez (green arrow) at the approximate moment when Officer Martinez found the gun)).  Once Officer Martinez found the gun, he signaled to his partners to arrest the defendant with the NYPD brevity code "92," and the defendant, still standing unsecured at the rear of the Mercedes, promptly attempted to flee, passing right by the Mercedes's open right rear door and the backpack, which still held the gun.  (Tr. 56:9-15, 57:19-58:7, 129:22-130:16, 132:5-11; Gov. Ex. 7; Gov. Ex. 3 at 01:27:00–01:27:04; Gov. Ex. 16 at 01:27:00–01:27:04).  Officers

---

[1] Febreze is an odor-eliminating spray: "For fabrics you wish you could wash: Fabric Refresher eliminates sunk-in stink with long-lasting freshness."  See Our Products, https://www.febreze.com/en-us/ingredients-safety/febreze-our-products (last visited on November 17, 2021).

on the scene, including Officer Martinez, quickly apprehended the defendant as he fled and placed him under arrest.  (Tr. 130:14-19; Gov. Ex. 3 at 01:27:00–01:27:14).  In the meantime, Officer Hassan went to the rear passenger side of the vehicle to guard the gun.  (Tr. 130:20-25; Gov. Ex. 8 at 01:27:07-01:27:22; see also Gov. Ex. 11).

After arresting the defendant, Officer Hassan drove the Mercedes back to the 67th Precinct.  (Tr. 133:20-134:3).  At the precinct, members of the NYPD Evidence Collection Team recovered a loaded Smith & Wesson 9mm semi-automatic pistol from the Mercedes.  (Tr. 134:8-16; Gov. Ex. 19).  The firearm was loaded with five bullets in its magazine.  (Tr. 135:10-17; Gov. Ex. 20).  A photograph taken at that time shows the loaded firearm sitting in the backpack inside of the Mercedes's passenger compartment.  (Tr. 113:2-10; See Gov. Ex. 13).  In addition, the contents of the bag recovered from the Mercedes's center console tested positive for marijuana.  (Tr. 134:13-20).

Finally, in addition to the loaded firearm, the officers also recovered from the backpack a portable digital scale of a kind commonly used to weigh marijuana; and a pack of Raw brand rolling papers.  (Tr. 118:22-24, 119:21-120:06, 125:3-19, 137:2-7; Gov. Ex. 22 (image of Raw rolling papers)).

<u>ARGUMENT</u>

In order to determine whether the stop and seizure was lawful, the Court must undertake a two-step inquiry to determine first, whether the officers' stop of the defendant was supported by reasonable suspicion, and second, whether the officers' subsequent search of the

backpack in the passenger compartment of the Mercedes was lawful under either the automobile exception to the warrant requirement or the search-incident-to-arrest doctrine.[2]

## I.    THE STOP WAS LAWFUL

The officers' stop of the defendant was supported by reasonable suspicion, if not probable cause, to believe that the defendant had committed a traffic infraction.  Additionally, the stop was supported by reasonable suspicion to believe that the defendant possessed marijuana.

### A.    Applicable Law

It is well established that "a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment."  United States v. Stewart, 551 F.3d 187, 191 (2d Cir. 2009).  Even when an officer does not witness an actual traffic violation, a stop is legal as long as the officer had reasonable suspicion of a traffic violation.  Id. at 193 ("[A] mistake of fact [as to a traffic violation] does not undermine the existence of reasonable suspicion.").  "A stop may also be valid even if the officer did not believe that he saw a traffic violation, as long as an objectively reasonable officer in his position would have suspected that a violation had occurred."  United States v. Stewart, 604 F. Supp. 2d 676, 680–81 (S.D.N.Y. 2009) (citing United States v. Harrell, 268 F.3d 141, 149 (2d Cir. 2001)).  Similarly, an officer's reasonable suspicion for a traffic stop can rest on a reasonable mistake of law.  Heien v. North Carolina, 574 U.S. 54, 61 (2014).  Moreover, the Second Circuit has long held that "an observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation."

---

[2] The government addresses the questions posed by the Court during oral argument at the evidentiary hearing in its argument addressing the application of the law to the facts established at the evidentiary hearing.

United States v. Dhinsa, 171 F.3d 721, 725 (2d Cir. 1998); see also Whren v. United States, 517

U.S. 806, 813 (1996) (upholding pretextual traffic stop because courts do not "entertain Fourth

Amendment challenges based on the actual motivations of the individual officers").

B.    The Officers' Testimony Was Consistent and Credible and Established that the Officers had Reasonable Suspicion, if Not Probable Cause, to Stop the Defendant

The evidence presented at the hearing demonstrated that the officers had at least

reasonable suspicion, if not probable cause, to stop the defendant for committing a traffic

infraction after they observed the defendant's Mercedes standing on a crosswalk.

New York Vehicle and Traffic Law ("VTL") § 1202(a)1.d, provides that:

Except when necessary to avoid conflict with other traffic, or when in compliance with law or the directions of a police officer or official traffic-control device, no person shall: Stop, stand or park a vehicle . . . On a cross walk.

Officers Modesto, Hassan, and Martinez observed the defendant's Mercedes standing on a

crosswalk at the corner of East 34th Street and Cortelyou Road on February 7, 2021 as they

approached the intersection.  (Tr. 24:7-14, 32:6-11, 104:22-105:6, 189:21-190:17).  The officers

also testified that the Mercedes did not move at any point during the ensuing stop and search.

(Tr. 32:6-11, 35:1-10, 48:23-49:13, 108:1-17, 132:18-22, 189:21-190:17, 193:3-13).  Each

officer's testimony on these facts was consistent with the testimony of the others, and neither the

defendant's affidavit nor any other evidence contradicts their testimony.  See Def.'s Decl. ¶¶ 2, 4

("I pulled over at the corner of Cortelyou Road and East 34th Street, in Brooklyn . . . . It had been

snowing, so I pulled over as close to the curb as I could . . . . While I was parked, police officers

approached my car."); see also United States v. Shaw, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003)

("[I]n the absence of an affidavit based on personal knowledge, no evidence exists to dispute the

facts described by the Government.").  These observations are also supported by the fact that the

defendant had a fronto leaf spread across his lap in preparation to roll a marijuana cigarette at the

time of the stop—an activity that appears consistent with a driver who was stationary, rather than mobile, in what the defendant describes as "unusual winter road conditions." (Tr. 24:17-26:14, 39:5-20, 106:13-107:1, 117:8-20, 184:15-185:6, 191:4-192:3; Def.'s Br. at 8). Moreover, the officers were candid in their testimony regarding what they could and could not recall about events that had occurred nearly eight months earlier. For example, neither Officer Modesto nor Officer Hassan could recall what message was transmitted from Modesto's and Martinez's vehicle to Hassan's just before the stop (Tr. 40:24-6; 142:18-145:3).

Although the defendant does not dispute, via affidavit, testimony or other admissible evidence that he was standing on the crosswalk at the time of the stop, he argues that the Court should nevertheless find the stop unlawful and suppress the firearm solely because the officers activated their body cameras only after approaching the Mercedes, and not when they first observed the vehicle standing on the crosswalk.[3] (See Def.'s Br. at 7-8). But the defendant cites no law for the proposition that to establish the facts authorizing a warrantless search of a vehicle the government is required to submit evidence in the particular form favored by the defendant. Here, the consistent, credible, and undisputed testimony of Officers Modesto,

---

[3] Although the defendant claims that the officers violated NYPD policy when they failed to timely activate their body cameras, it is far from clear that an officer's approach to a parked vehicle is the type of "vehicle stop" before which NYPD policy would require an officer to activate their body worn camera. But even if the officers neglected to follow NYPD policy to the letter when they did not immediately activate their cameras upon sighting the Mercedes in the crosswalk, the officers did activate their cameras shortly after they approached the vehicle, and the officers' consistent, credible, and undisputed testimony establishes that the defendant was standing on the crosswalk when they approached. The failure to observe the letter of internal NYPD policy in documenting a stop does not invalidate the stop's legality when the facts establish reasonable suspicion, if not probable cause, for the stop.

Hassan, and Martinez is easily sufficient to establish that the officers had reasonable suspicion, if not probable cause, to stop the defendant.

The defendant argues that, even if the officers observed the Mercedes standing on the crosswalk, this was not a traffic violation, because VTL § 1202(a)1.d provides that drivers may stand on a crosswalk "when necessary to avoid conflict with other traffic." (See Def.'s Br. at 8). Because there was snow on the road, the defendant claims, it was "necessary" for him to obstruct the crosswalk to avoid conflict with other traffic. (Id.) But the officers reasonably believed that the defendant had violated the VTL when they observed him standing in the middle of a crosswalk. For starters, the defendant could have driven further to locate a legal spot (as it appears every other civilian driver in the area had done) but he failed to do so apparently because it was inconvenient for him to park elsewhere in light of the snow. The inconvenience to the defendant did not make it necessary for him to obstruct the crosswalk.[4] But, even if the defendant had a lawful basis for blocking the pedestrian crosswalk, which he did not, under the circumstances the officers' belief that the defendant had violated the VTL by obstructing a crosswalk was a reasonable and sufficient basis for the stop. See United States v. Weaver, 9 F.4th 129, 140 (2d Cir. 2021) ("The Supreme Court has 'consistently recognized that reasonable suspicion need not rule out the possibility of innocent conduct.'" (quoting Navarette v. California, 572 U.S. 393 (2014))); Stewart, 551 F.3d at 193 ("[A] mistake of fact [as to a traffic violation] does not undermine the existence of reasonable suspicion."); Fernandez v. City of New York, No. 19CV1862 (DLC), 2020 WL 4266931, at *3 (S.D.N.Y. July 24, 2020) (holding

---

[4] Likewise, neither the snow on the crosswalk nor the defendant's purported partial obstruction of the crosswalk, make his standing on the crosswalk (i) "necessary to avoid conflict with other traffic" or (ii) "in compliance with law or the directions of a police officer or official traffic-control device." See VTL § 1202(a)1.d.

that officers had reasonable suspicion that the plaintiff double parked, in violation of the VTL, where the plaintiff claimed he had stopped to avoid oncoming traffic).

Furthermore, even if the officers lacked reasonable suspicion to stop the Mercedes for standing on the crosswalk, before the officers approached the Mercedes, Officer Modesto had observed the defendant seated alone in the Mercedes with the Mercedes's front windows open, preparing to roll a marijuana cigarette. (Tr. 23:19-23, 24:17-26:14, 39:5-20, 41:19-21, 42:11-43:2). Officer Modesto also smelled the odor of marijuana, which he believed to be coming from the Mercedes. (Tr. 41:7-42:5). Thus, the officers had reasonable suspicion to stop the Mercedes to investigate whether the defendant possessed marijuana in violation of New York law. See United States v. Jenkins, 452 F.3d 207, 214 (2d Cir. 2006) ("officers who . . . stopped a vehicle on the basis of a reasonable factual mistake [who then] approach[ed] the vehicle [to] apprise the vehicle's occupants of the situation" had reasonable suspicion for stop when they detected marijuana odor emanating from the vehicle as they approached); United States v. Daniels, No. 21-CR-81 (KAM), 2021 WL 4690837, at *6 (E.D.N.Y. Oct. 7, 2021) (approach of parked vehicle was supported by reasonable suspicion where officer "smelled the odor of marijuana through his open car door window and observed the smoking of what he suspected was marijuana in the parked [vehicle]"); United States v. Watson, No. 20-CR-346 (JSR), 2021 WL 535807, at *5 (S.D.N.Y. Feb. 11, 2021) (officers had reasonable suspicion for stop where they observed defendant with an unlit cigar they believed to contain marijuana and "[a]s the officers approached [the defendant] -- and before directing him to stop -- [one of the officers] started to smell marijuana.").

In sum, the officers' accounts of seeing the Mercedes standing on the crosswalk as they approached the intersection on February 7, 2021, substantially corroborated each other.

The defendant has not offered any evidence contradicting their testimony and the defendant's cross-examination failed to manufacture any real doubt regarding their accounts of the events leading to the stop of the Mercedes. Accordingly, the Court should credit their testimony and conclude that the officers had at least reasonable suspicion, if not probable cause, to stop the Mercedes for standing on a crosswalk at the corner of East 34th Street and Cortelyou Road on February 7, 2021. Alternatively, the Court should find that the officers had reasonable suspicion to approach the Mercedes to investigate the defendant's apparent possession of marijuana.

II.     THE SEARCH WAS LAWFUL

The February 7, 2021 search of the defendant's Mercedes, including the backpack in the back seat, was legally permitted on two independent grounds—the automobile exception to the Fourth Amendment's warrant requirement and the search-incident-to-arrest doctrine— each of which is independently sufficient to justify the search.

    A.     The Search was Lawful Under the Automobile Exception to the Warrant Requirement

        1.     Applicable Law

It is well settled that "[u]nder the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004). The automobile exception has long been recognized because, as a matter of constitutional law, "an individual's expectation of privacy in an automobile is significantly lower than his expectation of privacy in a residence." United States v. Smith, 621 F.2d 483, 488 (2d Cir. 1980). In Rakas v. Illinois, 439 U.S. 128, 148 (1978), the Supreme Court observed that "[w]e have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for

Fourth Amendment purposes." In his concurring opinion in Rakas, Justice Powell explained the rationale behind the distinction:

> Automobiles operate on public streets; they are serviced in public places; they stop frequently; they are usually parked in public places; their interiors are highly visible; and they are subject to extensive regulation and inspection.

Id. at 154.

Thus, it is well established that, "[u]nder the 'automobile' exception to the warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." United States v. Wilson, 699 F.3d 235, 245 (2d Cir. 2012). Moreover, in United States v. Ross, 456 U.S. 798, 825 (1982), the Supreme Court held as a matter of law that when a warrantless search of a vehicle is justified, it also extends to the closed containers therein, holding that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." See also California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."); United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (the permissible scope of a vehicle search pursuant to the automobile exception "[include[es] all containers and packages] that may conceal the object of the search" (internal quotation marks and citations omitted)); cf. Arizona v. Gant, 556 U.S. 332, 347 (2009) (observing that when probable cause exists "to believe a vehicle contains evidence of criminal activity . . . . the scope of the search authorized is broader" than what is permitted incident to an arrest).

2.    Discussion

As the Court noted during the October 6, 2021 hearing, and as the defense concedes, the question that resolves this case is as follows: "The officers obviously have probable cause to believe that there's marijuana in the vehicle because they see it right in the center console. But then they continue to search the vehicle for more evidence. And the question is what is the source of their legal authorization to open the backpack and dig through it?" (See Tr. 6:16-22; Def.'s Br. at 1). The answer, contrary to the defendant's claim, is that Second Circuit caselaw holds that finding marijuana in a car gives rise to probable cause to believe that there will be additional marijuana or marijuana paraphernalia found in the car's passenger compartment.

As Officers Modesto, Hassan, and Martinez credibly testified, all three officers saw the defendant with rolling paper on his lap and smelled the odor of marijuana coming from the car's open windows at the time of the stop.[5] (Tr. 23:19-23, 26:1-4, 39:5-20, 41:7-43:2, 106:13-107:1, 107:11-17, 117:8-20, 118:15-19, 184:15-185:6, 191:4-192:3, 192:7-11, 192:18-193:2). In addition, Officers Modesto and Martinez testified that they saw, in the car's center console, what appeared to be a small bag of marijuana and a plastic cup. (Tr. 107:2-10; 191:4-9, 192:12-17; Gov. Exs. 9-10, 12, 17). Officer Martinez was also able to see that the plastic cup in the center console contained ashes. (Tr. 192:12-17). Based on these facts, the officers had probable cause to search the passenger compartment, and the backpack, for marijuana and

_____

[5] The officers later recovered a portable digital scale, commonly used to weigh marijuana; and a pack of Raw brand rolling papers from the backpack. (Tr. 118:22-24, 119:21-120:06, 125:3-19, 137:2-7; Gov. Ex. 22 (image of Raw rolling papers)). The backpack also contained a bottle of Febreze. (Tr. 197:11-16; Gov. Ex. 16 at 01:26:50-01:27:01). Although these items were found later, their discovery further corroborates the fact that the officers smelled the odor of marijuana at the time of the search.

marijuana paraphernalia. See United States v. Goolsby, 820 F. App'x 47, 48–49 (2d Cir. 2020),

cert. denied, 141 S. Ct. 2818 (2021) (finding probable cause to search a car "and any containers

found therein," including a "shoebox or lunchbox" observed in a car's passenger compartment,

where the officer smelled marijuana and the defendant indicated "that he had been smoking

earlier"); United States v. Pascual, 502 F. App'x 75, 78 (2d Cir. 2012) ("If probable cause

justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the

vehicle and its contents that may conceal the object of the search." (quoting Ross, 456 U.S. at

825 (internal quotation marks omitted)); United States v. Carter, 173 F. App'x 79, 81 (2d Cir.

2006) (affirming denial of motion to suppress where "the fact that a marijuana cigarette was seen

in the open ashtray . . . . [gave] rise to a fair probability that contraband or evidence of a crime

would be found [elsewhere in the vehicle]") (summary order); Daniels, 2021 WL 4690837, at *9

("[U]nder the automobile exception, based on a generalized smell of marijuana, police officers

may search the defendant's vehicle and any containers where marijuana may be discovered.");

United States v. Colon, No. 10 CR. 498 RPP, 2011 WL 569874, at *12 (S.D.N.Y. Feb. 8, 2011)

("The odor of marijuana coming from a vehicle can establish probable cause.").

      Given the facts outlined above, there was a fair probability that the passenger

compartment of the car, and the containers therein, would contain marijuana and marijuana

paraphernalia. However, in addition to the facts outlined above, the defendant told Officer

Hassan that the bag in the center console contained marijuana, and, upon entering the car,

Officers Hassan and Martinez, were able to see more closely that the center console did in fact

contain a bag of marijuana, as well as a cup with ashes, and a ziplock bag with rolling paper

stems. Thus, when the officers began their search of the vehicle the facts known to them gave

rise to more than just a "fair probability" that marijuana was in the vehicle; the officers were

certain that contraband was present in the car because they had seen the bag of marijuana in the center console.

Yet, the defendant contends that the certainty that marijuana was present in the Mercedes paradoxically deprived the officers of probable cause to search the vehicle for evidence of marijuana possession and additional contraband. The defendant reasons that once the officers had found some marijuana, they were required as a matter of law to assume that no further contraband or evidence would be found in the car. (See Def.'s Br. at 8-19). This argument turns probable cause analysis on its head and is wholly without support in the case law of this Circuit.

In United States v. Vereen, police officers stopped the defendant's vehicle for illegally tinted windows. No. 20-CR-566 (RA), 2021 WL 3771989, at *1 (S.D.N.Y. Aug. 23, 2021). As they approached the vehicle, at least one of the officers smelled the odor of marijuana coming from the vehicle. Id. The officers then had the defendant and another vehicle occupant step out of the vehicle and began a warrantless search of the passenger compartment. Id. As the officers searched the passenger compartment, one of the officers found the remains of what appeared to be a marijuana cigarette, which he believed to be the source of the odor he had smelled. Id. at *2. Nonetheless, the officers continued the search and found a gun in the vehicle's back seat. Id.

In moving to suppress the gun, the defendant in Vereen argued that, despite having probable cause to commence a search of his vehicle, the officers were required to end the search once they found the remains of the marijuana cigarette, which was the source of the marijuana odor. Id. at 5. In denying the motion to suppress, the court found that "probable cause to search the vehicle did not dissipate the moment [the officer] retrieved the roach in the front

seat area." Id. at *6. As the court explained, "courts have consistently held that the odor of burnt marijuana provides officers with probable cause to search *at least* the passenger compartment of a vehicle . . . and that an officer's identification of some marijuana along the way does not require the search to end at that point." Id. (citations omitted). "[T]he fact that the officers saw or found some physical evidence of marijuana that could have explained the initial smell did not require them to "'call off the search.'" Id. at *6 (citing United States v. Loucks, 806 F.2d 208, 209 (10th Cir. 1986)).

Courts in this Circuit have repeatedly held that the recovery of marijuana from a vehicle does not reduce the probability that marijuana or marijuana paraphernalia will be found elsewhere in the vehicle. See Carter, 173 F. App'x at 81 (marijuana cigarette seen in an ashtray) (summary order); United States v. Cuevas, No. 15-CR-846 (PKC), 2016 WL 2766657, at *3 (S.D.N.Y. May 12, 2016) (bag of marijuana in center console provided probable cause to search "any part of the vehicle or any container therein, including a shirt pocket inside a backpack inside the trunk."); United States v. Delille, No. 2:15-CR-88, 2016 WL 236464, at *5 (D. Vt. Jan. 19, 2016) (officer "observed marijuana flake in the passenger foot well and what appeared to be streaks of marijuana flake on the passenger seat."); United States v. Faison, No. 15-CR-186 (PGG), 2015 WL 5915964, at *5 (S.D.N.Y. Oct. 8, 2015) ("observation of a marijuana cigarette on the center console merely confirmed that there was probable cause . . . . [and, thus,] the officers were authorized to search 'every part of the vehicle [,] . . . [including all containers or compartments] that m[ight] conceal the object of the search.'" (citation omitted)). "The common-sense principle animating these decisions is that, when a search is justified by the odor of marijuana and the officer then finds some amount of marijuana, it would be reasonable for

him to conclude that, if he continues to search, there is a 'fair probability' that he will find more."  Vereen, 2021 WL 3771989, at *6.

Accordingly, when Officers Modesto, Hassan, and Martinez smelled the odor of marijuana coming from the open windows of the Mercedes, and observed the fronto leaf on the defendant's lap, they had probable cause to search the passenger compartment of the Mercedes and any containers inside which might have held marijuana or marijuana paraphernalia, including the backpack.  See Navas, 597 F.3d at 497 (the permissible scope of a vehicle search pursuant to the automobile exception "[include[es] all containers and packages] that may conceal the object of the search" (internal quotation marks and citations omitted)).  Having actually seen the bag of marijuana in the center console did not reduce the probability that there would be additional marijuana or marijuana paraphernalia elsewhere in the Mercedes.  See Vereen, 2021 WL 3771989, at *6 (officer "was not required to terminate that search merely because he found some physical evidence that could have explained the smell."); see also Johnson v. City of New York, No. 18-CV-6256 (RA), 2020 WL 2732068, at *7–8 (S.D.N.Y. May 26, 2020) ("[C]ourts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." (internal quotation marks and citations omitted)).  In fact, the probability that there would be additional marijuana elsewhere in the Mercedes was even greater than it was in Vereen.  In Vereen, the officer saw the remnants of what appeared to be a marijuana cigarette that he believed to be the source of the marijuana odor. Vereen, 2021 WL 3771989, at *2.  Here, not only was it unclear where in the car the odor was coming from, but it was certainly unclear that the bag in the center console—which the defendant claims to have been factory sealed (see Def.'s Br. at 4, 10-11)—was the sole source of the marijuana odor that Officers Modesto, Hassan, and Martinez smelled.  (Tr. 86:11-87:1,

118:15-19, 121:10-14; 192:18-24). Rather, there was <u>at least</u> a fair probability that the odor was also coming from other sources in the Mercedes, such as the open backpack on the back seat that was within arm's distance of the driver. And even if there was not a fair probability to believe that the odor of marijuana was coming from the backpack—though there was—there was a fair probability to believe that the driver who had previously smoked in the car and had been preparing to smoke again, would have kept additional marijuana or paraphernalia (such as rolling papers, a scale, or even Febreze—to mask the pungent odor) in the open backpack that was within arm's reach of his seat. Thus, the probable cause to search the passenger compartment of the car included the backpack. <u>See</u> <u>Pascual</u>, 502 F. App'x at 78 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (quoting <u>Ross</u>, 456 U.S. at 825 (internal quotation marks omitted)); <u>Johnson</u>, 2020 WL 2732068, at *7–8 ("To support a warrantless search pursuant to the automobile exception, there need only be a 'fair probability' that 'contraband or evidence of a crime will be found.'" (citations omitted)).

As the officers had probable cause to search the passenger compartment, including the backpack, pursuant to the automobile exception, the defendant's motion should be denied. This conclusion—that the search of the backpack was lawful—is undisturbed by the fact that the bag in the center console contained a violation-quantity of marijuana. First, the automobile exception permits a search where there is a "fair probability that <u>contraband</u> or evidence of a crime would be found," <u>see, e.g.</u>, <u>Carter</u>, 173 F. App'x at 81 (emphasis added), and a violation-quantity of marijuana is contraband. <u>See</u> <u>Colon</u>, 2011 WL 569874, at *12 (holding that a violation-quantity of marijuana was unlawful to possess under New York law and was therefore a "form of contraband"); <u>see also</u> <u>United States v. Pierce</u>, 224 F.3d 158, 166–67 (2d

Cir. 2000) (defining contraband as "'illegal or prohibited traffic' or 'goods or merchandise the importation, exportation, or sometimes possession of which is forbidden.'" (quoting <u>Webster's Third New International Dictionary</u> 494 (1981))); CONTRABAND, Black's Law Dictionary (11th ed. 2019) ("1. Illegal or prohibited trade; smuggling. 2. Goods that are unlawful to import, export, produce, or possess.").[6]  Second, the defendant's argument that the search was unlawful because the officers only found a violation-quantity of marijuana is a red herring.  The question before the court in determining whether the search was lawful is whether the officers had probable cause to believe that the car contained evidence of marijuana possession at the time of the search.  Whether the car turned out to contain a violation-quantity of marijuana, or even none at all, did not retroactively deprive the officers of probable cause to investigate the information available to them at the time of the search, which gave rise to the reasonable belief that the vehicle concealed evidence of marijuana possession.  <u>See, e.g.</u>, <u>Vereen</u>, 2021 WL 3771989, at *2 (denying motion to suppress where the police lab could not determine whether the 65 <u>milligrams</u> of "vegetative material" recovered from the defendant's vehicle was marijuana).

Accordingly, the officers' search of the Mercedes and the backpack for marijuana was supported by probable cause and was therefore lawful under the automobile exception to the Fourth Amendment's warrant requirement.

---

[6]  Although the defendant asserts that a violation-quantity of marijuana could not justify a vehicle search, and is "more analogous to other non-criminal violations[,]" such as littering, <u>see</u> Def.'s Br. at 14-15, such violations may also be the basis for a lawful warrantless vehicle search. <u>See</u>, <u>e.g.</u>, <u>United States v. Abreu</u>, No. 20-CR-0052 (DLC), 2021 WL 50867, at *3 (S.D.N.Y. Jan. 6, 2021) ("Having concluded that the crime of littering had occurred, Officer Kern was entitled to enter the livery cab to retrieve evidence of the crime.").

B.     The Search was Also Lawful Under the Search-Incident-to-Arrest Doctrine

1.     Applicable Law

Probable cause to arrest "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested."  United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983).  Law enforcement officers may make warrantless arrests even for minor infractions committed in the officer's presence.  Atwater v. City of Lago Vista, 532 U.S. 318, 346-47, 355 (2001) (Fourth Amendment not violated by full arrest of driver for failure to fasten seatbelt).

The law is clear that officers may conduct a warrantless search of the passenger compartment of a vehicle incident to the arrest of a recent occupant of the vehicle.  "The search-incident-to-arrest doctrine is an exception to the general requirement that an officer must obtain a judicial warrant supported by probable cause before conducting a search."  United States v. Diaz, 854 F.3d 197, 205 (2d Cir. 2017).  The purpose of the doctrine is two-fold: "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy."  Gant, 556 U.S. at 339.  Thus, when an officer has probable cause to make an arrest, "[i]It makes no difference whether the search occurs before or after the arrest . . . so long as it is 'substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" Diaz, 854 F.3d at 205 (citations omitted).  Furthermore, the Second Circuit has held that an officer need not have formed the intent to make an arrest at the time the search is conducted.  See id. at 208-09 (an officer made "a valid search incident to an arrest, despite the fact that she did not intend to arrest [the defendant] when she began the search.").

Police officers may search a vehicle incident to a recent occupant's arrest on two bases.  First, officers may search the vehicle's passenger compartment "when the arrestee is

unsecured and within reaching distance of the passenger compartment at the time of the search."

Gant, 556 U.S. at 343.  Second, "when it is 'reasonable to believe evidence relevant to the crime

of arrest might be found in the vehicle' . . . . officers may search the "passenger compartment of

an arrestee's vehicle and any containers therein."  Id. at 343-44 (quoting Thornton v. United

States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).  Moreover, when there is

a reasonable basis to believe that the vehicle contains evidence of the crime of arrest, it is lawful

to conduct such a search "even after the arrestee has been secured and cannot access the interior

of the vehicle."  United States v. Gonzalez, 441 F. App'x 31, 34 (2d Cir. 2011).

    2.   Discussion

        a.   The Officers Had Probable Cause to Arrest the Defendant for
             Illegally Stopping in a Crosswalk and for Illegally Possessing
             Marijuana

As outlined above, Officers Modesto, Hassan, and Martinez observed the

defendant's Mercedes standing on a pedestrian crosswalk and therefore had probable cause to

believe the defendant had committed a traffic infraction.  (Tr. 24:7-14, 32:6-11, 35:1-10, 48:23-

49:13, 104:22-105:6, 108:1-17, 132:18-22, 189:21-190:17, 193:3-13; see VTL § 1202(a)1.d).

Officers Hassan and Martinez also had probable cause to believe that the defendant possessed

marijuana, in violation of New York Penal Law, Section 221.05 (effective Aug. 28, 2019 to Mar.

30, 2021).  (Tr. 23:19-23, 26:1-4, 39:5-20, 41:7-43:2, 106:13-107:17, 117:8-20, 118:15-19,

184:15-185:6, 191:4-192:3, 192:7-193:2; Gov. Exs. 9-10, 12, 17).  Based on these observations,

the officers had probable cause to arrest the defendant for both offenses.

New York law provides that, "a police officer may arrest a person for . . . [a]ny

offense when he or she has reasonable cause to believe that such person has committed such

offense in his or her presence," N.Y. Crim. Proc. Law ("N.Y.C.P.L.") § 140.10(1)(a), and further

provides that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of

the criminal procedure law, a traffic infraction shall be deemed an offense," VTL § 155. See, e.g., United States v. White, 298 F. Supp. 3d 451, 458 & n.3 (E.D.N.Y. 2018) (holding that officers had probable cause to arrest defendant for parking within fifteen feet of fire hydrant). That obstructing a crosswalk is only a minor offense is irrelevant, see Atwater, 532 U.S. at 346-47 (Fourth Amendment not violated by full arrest of driver for failure to fasten seatbelt), as are the officers' motives in making such an arrest, see Lee v. Sanberg, 136 F.3d 94, 103 n.5 (2d Cir. 1997).

   Similarly, on February 7, 2021, New York law classified the possession of marijuana as a violation punishable by a fine. See N.Y.P.L. § 221.05 (effective Aug. 28, 2019 to Mar. 30, 2021). Accordingly, on that date, a person could be arrested for possessing marijuana in New York. See N.Y.C.P.L. § 140.10 ("[A] police officer may arrest a person for: (a) Any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence[.]"); N.Y.P.L. § 10.00(1) (defining "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state"); N.Y.P.L. § 221.05 (effective Aug. 28, 2019 to Mar. 30, 2021) (providing for a sentence to a fine for possession of marijuana); United States v. Garcia, No. 18 CR. 178 (AT), 2018 WL 3407707, at *5 (S.D.N.Y. June 5, 2018) ("Although New York classifies possession of small amounts of marijuana as a non-jailable offense punishable 'only by a fine of not more than one hundred dollars,' N.Y. Penal Law § 221.05, the conclusion Defendant draws—that marijuana possession cannot be grounds for arrest—is without force."); Cuevas, 2016 WL 2766657, at *4 (holding that there was probable cause to arrest for violation-quantity possession of marijuana).

   As noted in the defendant's September 2, 2021 pre-hearing reply brief in this matter, (Dkt. No. 17), New York Criminal Procedure Law, Section 150.20 was amended on

January 1, 2020, to indicate that officers authorized by N.Y.C.P.L. § 140 to make warrantless arrests for certain offenses "shall" issue an "appearance ticket," which includes what is referred to as a "desk appearance ticket."  See N.Y.C.P.L. § 150.10 ("An appearance ticket is a written notice issued and subscribed by a police officer . . . directing a designated person to appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense."); Zarkower v. City of New York, 461 F. Supp. 3d 31, 38 (E.D.N.Y. 2020) ("A [desk appearance ticket] is a document directing a person to 'appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense.'" (quoting N.Y.C.P.L. § 150.10)).  However, this change in law did not restrict an officer's authority to make an arrest for the offenses at issue in this matter and, instead, simply changed the procedure for processing a defendant once he or she is taken into custody.  See Zarkower, 461 F. Supp. 3d at 38 ("The [desk appearance ticket procedure operates as an alternative to holding an arrestee in custody until arraignment.") (citations omitted); Black Jack Distributors, Inc. v. Beame, 433 F. Supp. 1297, 1301 (S.D.N.Y. 1977) ("The 'desk appearance ticket' procedure enables a qualifying defendant . . . to leave the stationhouse after the initial processing merely by accepting a written ticket requiring his appearance in court at some future time.").

To issue a desk appearance ticket, an officer must handcuff the defendant, transport them and their vehicle to a police precinct, and place them in a holding cell before determining whether the issuance of a desk appearance ticket is warranted.  (Tr. 127:14-128:7; NYPD Patrol Guide Section 208-27 ("To issue a [desk appearance ticket] in lieu of detention . . . . [c]omply with appropriate arrest processing guidelines and remove prisoner to

precinct of arrest/designated arrest facility and advise desk officer of facts.") [7]  Additionally,

N.Y.C.P.L § 150.20 includes numerous exceptions to the requirement that officers issue a desk

appearance ticket, several of which require investigation at a precinct.  For example, "[a]n officer

is not required to issue an appearance ticket if: (i) the person has one or more outstanding local

criminal court or superior court warrants; [or] (ii) the person has failed to appear in court

proceedings in the last two years[.]"  See N.Y.C.P.L § 150.20.  Thus, to issue a desk appearance

ticket, an officer must undertake a procedure that is an "arrest" under federal law.  See Torres v.

Madrid, 141 S. Ct. 989, 996 (2021) ("The 'seizure' of a 'person' plainly refers to an arrest.");

Atwater, 532 U.S. at 354–55 (describing as an "arrest," an incident in which a woman "was

handcuffed, placed in a squad car, and taken to the local police station, where officers asked her

to remove her shoes, jewelry, and glasses, and to empty her pockets"); United States v. Pena, 351

F. Supp. 3d 723, 733 (S.D.N.Y. 2019) ("[h]andcuffs are generally recognized as a hallmark of a

formal arrest." (internal quotation marks and citation omitted)).  Accordingly, Officers Modesto,

Hassan, and Martinez, were authorized, pursuant to N.Y.C.P.L. § 140, to arrest the defendant for

his traffic infraction and possession of marijuana on February 7, 2021.  See, e.g., Kee v. City of

New York, 12 F.4th 150, 159–60 (2d Cir. 2021) (officers had probable cause to arrest for

violation committed in their presence); Vyrkin v. Triboro Bridge & Tunnel Auth., No. 18-CV-

12106 (JGK), 2021 WL 797654, at *3 (S.D.N.Y. Mar. 2, 2021) (officer had probable cause to

arrest for traffic infraction); Daniels, 2021 WL 4690837, at *10 n.9 ("a marijuana violation

permits law enforcement to effectuate an arrest").

---

[7]  See New York City Police Department Patrol Guide, Section 208-27,
https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide2.pdf (last
visited on November 17, 2021).

b.	The Officers Were Permitted to Search the Mercedes's Passenger
Compartment, Including the Backpack, Incident to Arrest

Because the officers had probable cause to arrest the defendant both for the traffic

infraction and for marijuana possession, they were permitted to search the passenger

compartment of his Mercedes, including his open backpack, without a warrant for two additional

separate and independently sufficient reasons.  First, at the time of the search, the defendant was

unsecured and within reaching distance of the Mercedes's passenger compartment, including the

open backpack.  See Gant, 556 U.S. at 343.  Second, even if the defendant was not within

reaching distance of the passenger compartment, the officers had probable cause to arrest the

defendant for marijuana possession, and reason to believe that the passenger compartment and

the backpack contained evidence of that violation, justifying a search of the "passenger

compartment of [the defendant's] vehicle and any containers therein." Id. at 343-44.

Under Gant, "police may search a vehicle incident to a recent occupant's arrest

only if the arrestee is within reaching distance of the passenger compartment at the time of the

search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  Id. at

351 (emphasis added).  Here, the officers were permitted to search the Mercedes's passenger

compartment, and the backpack, both because the defendant was within reaching distance of the

passenger compartment at the time of the search, and because it was reasonable to believe that

the Mercedes contained evidence of marijuana possession.

The first prong of Gant permits an officer to search a vehicle when an arrestee is

"within reaching distance of the passenger compartment at the time of the search."  Id. at 351.

"This exception [to the warrant requirement] derives from interests in officer safety[.]"  Id. at

338.  Determining "reaching distance" is a functional inquiry that turns on a defendant's

"possibility of access" to a vehicle's passenger compartment, rather than on any particular

measure of the distance from the defendant to the vehicle's passenger compartment.  See id. at 344; see also United States v. Cushnie, No. 14-CR-119 (PGG), 2014 WL 7447149, at *11 (S.D.N.Y. Dec. 31, 2014) (denying motion to suppress where defendant was handcuffed, and several officers were present but "the item in question remain[ed] in 'the area from within which [the arrestee] might gain possession of a weapon or destructible evidence'" (quoting Chimel v. California, 395 U.S. 752, 763 (1969)).[8]

Here, the defendant was unsecured and within arm's reach of the passenger compartment and the open backpack as the search began.  (See Gov. Exs. 3, 8 and 16 at 01:25:57 (depicting Officer Martinez opening the Mercedes's front passenger door to begin the search as the defendant stood next to the rear passenger door's open window)).  Then, even when he stood at the rear of the Mercedes, the defendant was unsecured.  (See Gov. Ex. 3 at 01:26:00-01:27:14; Gov. Exs. 6-7; Tr. 87:2-20).  Although he could not physically reach the backpack from the rear of the Mercedes without moving, it was still possible for him to gain access to the passenger compartment of the Mercedes.  In fact, when the defendant fled, he ran right next to the open rear passenger door of the Mercedes, clearly demonstrating that he could have accessed the passenger compartment.  (See Gov. Ex. 7).  Thus, the defendant was within "reaching distance" of the Mercedes's passenger compartment at the beginning, and throughout the duration of the search, and the warrantless search of the passenger compartment and the backpack was permitted under Gant.

---

[8]  The government agrees that the Mercedes is approximately 73 inches wide and 191 inches long.  See Def.'s Br. at 6.  However, the precise dimensions of the Mercedes do not determine the key issue under the first Gant prong, i.e., whether it would have been possible for the defendant to access the Mercedes's passenger compartment.

Yet, even if the defendant was not within "reaching distance" of the Mercedes's passenger compartment at the time of the search, the search was permitted under Gant's second prong. Under Gant's second prong, even if a defendant is not within reaching distance of a vehicle at the time of the search, an officer may search a vehicle "incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." Gant, 556 U.S. at 335. Here, Officers Modesto, Hassan, and Martinez saw the defendant with rolling papers on his lap and smelled the odor of marijuana coming from the car's open windows at the time of the stop, (Tr. 23:19-23, 26:1-4, 39:5-20, 41:7-43:2, 106:13-107:1, 107:11-17, 117:8-20, 118:15-19, 184:15-185:6, 191:4-192:3, 192:7-11, 192:18-193:2), and Officers Modesto and Martinez also saw a small bag of marijuana in the Mercedes's center console (Tr. 107:2-10; 191:4-9, 192:12-17; Gov. Exs. 9-10, 12, 17). Given these facts, especially the odor of marijuana coming from the car, and that that there was an open backpack within arm's reach of the driver, it was "reasonable to believe" that evidence of marijuana possession (i.e., additional marijuana or marijuana paraphernalia) would be found in other parts of the passenger compartment, including the backpack. See, e.g., Faison, 2015 WL 5915964, at *7 (search of passenger compartment and any containers therein for marijuana was reasonable incident to arrest for marijuana possession, where arrest was based on "(1) the strong odor of marijuana emanating from [the] vehicle; (2) [the officer's] observation of a marijuana cigarette on the center console of the vehicle; and (3) [the defendant's] behavior when officers directed him to get out of the vehicle"); see also Johnson, 2020 WL 2732068, at *7–8 ("In light of the Court's conclusion that there was probable cause to arrest Plaintiff for criminal possession of a controlled substance based on Defendant Mills' observation of crack cocaine inside the car, 'it was certainly reasonable to believe that the car contained additional "evidence relevant to the crime of arrest," and thus, [the officers] were

authorized to search it and any containers therein.'" (citations and internal quotation marks omitted)).[9]

Accordingly, the officers had probable cause to arrest the defendant for two distinct offenses, and thus, their search of the Mercedes and the backpack for marijuana was lawful under the search-incident-to-arrest doctrine. However, as discussed above, the Court need not reach the question of whether the search of the backpack was permitted under Gant, because the search was also lawful pursuant "to the separate and conceptually distinct automobile exception . . . [to which] the limitations placed on searches incident to arrest do not apply." Pascual, 502 F. App'x at 78 n.3 (citing Gant, 556 U.S. at 347); see Gant, 556 U.S. at 347 (the "scope of the search authorized [by the automobile exception] is broader" than that authorized in searches incident to arrest).

## III. THE SUBJECTIVE INTENT OF THE OFFICERS IS IRRELEVANT

At the October 6, 2021 hearing in this matter, in addition to questions addressed by the information above, the Court posed the following question:

> [T]o what extent do the police officers' subjective intentions matter? And I can be even more specific as to what subjective intentions I'm talking about . . . . [I]f we assume that if the police officers have a subjective intention to move on with -- without making any arrest if all they find is marijuana, what is the legal relevance of that subjective intention, if any, under the legal doctrines we're talking about?

---

[9]  Although the defendant argues that what the officers observed was a "completed" offense (see Def.'s Br. at 17-19), "[l]aw enforcement is entitled to enter a vehicle to retrieve evidence of an observed crime, whether or not the criminal activity has ceased." Abreu, 2021 WL 50867, at *4. In addition, even if the defendant's possession of the bag of marijuana was completed once the officers took possession of the marijuana, the officers had probable cause— based on numerous other factors, including the odor of marijuana emanating from the Mercedes, and the ashes in the center console—to believe that there would be additional evidence of marijuana possession in the open backpack positioned just behind the driver.

(Tr. 208:7-209:4).  The answer is that the subjective intentions of the officers—both in conducting the stop and in performing the search—are irrelevant to the Fourth Amendment analysis.

"The Supreme Court has long rejected any attempt to inject subjectivity into the Fourth Amendment context."  Weaver, 9 F.4th at 145 (citations omitted); see, e.g., Brigham City v. Stuart, 547 U.S. 398, 404 (2006) ("The officer's subjective motivation is irrelevant."); Bond v. United States, 529 U.S. 334, 338 n.2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment."); Whren, 517 U.S. at 813 ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers[.]").  Despite this fact, the defendant has repeatedly invited the Court to assess the subjective intentions of the Officers in conducting this analysis.  (See Tr. 59:11-12, 76:18-20, 77:4-15, 140:7-11, 176:19-21; Def.'s Br. at 18).  This effort is improper and should be rejected. Even assuming arguendo that the officers were aware of the defendant's criminal history and were motivated to stop and search the Mercedes for a gun, "the subjective motivation of the officers who made the stop is irrelevant; arguments 'that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved' are 'foreclose[d].'"  United States v. Ojo, 630 F. App'x 83, 85 (2d Cir. 2015) (summary order) (citing Whren, 517 U.S. at 813; then citing Dhinsa, 171 F.3d at 724–25)).  As the officers had reasonable suspicion to stop the Mercedes based on both the traffic violation and marijuana possession, the stop was lawful regardless of their motives.  See Dhinsa, 171 F.3d at 724–25 ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.").  Similarly, any motivation to

search the Mercedes for a gun is irrelevant.  See United States v. Klump, 536 F.3d 113, 118 (2d Cir. 2008) ("[T]he Supreme Court has made clear that the subjective intent of government agents is irrelevant to determining whether a particular search was reasonable under the Fourth Amendment.").

In addition, any "subjective intention [of Officers Modesto, Hassan, or Martinez] to move on . . . without making any arrest if all they [found was] marijuana" (Tr. 209:1-2), is also irrelevant.  The Second Circuit has clearly held that an officer may perform a lawful search incident to arrest, even if he or she does not intend to make an arrest at the time he or she performs a search incident to arrest.  See Diaz, 854 F.3d at 209 ("Officer Aybar's search of Diaz was a valid search incident to an arrest, despite the fact that she did not intend to arrest him when she began the search."); United States v. Dupree, 767 F. App'x 181, 183 (2d Cir.), cert. denied, 140 S. Ct. 474 (2019) (affirming denial of motion to suppress firearm because officers could lawfully arrest, and thus search defendant for jaywalking, even if they had no intention of arresting the defendant for jaywalking) (summary order)).  Thus, even if Officers Modesto, Hassan, and Martinez had no intention of arresting the defendant solely for the traffic infraction or possession of marijuana at the time they began their search, they were permitted to perform a warrantless search of the Mercedes under the search-incident-to-arrest doctrine.

<u>CONCLUSION</u>

Accordingly, the Court should deny the defendant's motion to suppress in its entirety.

Dated:   Brooklyn, New York
         November 17, 2021

                              Respectfully submitted,

                              BREON PEACE
                              United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


                    By:   <u>/s/ Garen S. Marshall          </u>
                          Garen S. Marshall
                          Assistant United States Attorney
                          (718) 254-6569