# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

November 24, 2021

**Via Email and ECF**
The Honorable Eric Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

Re:    **United States v. Kyle Balkissoon, 21-CR-186 (EK)**

Dear Judge Komitee,

I write to reply to the government's post-hearing opposition, ECF No. 26, to Balkissoon's motion to suppress.  ECF No. 12, 23.  In its opposition, the government admits that Balkissoon's actions—sitting in a crosswalk and possessing one sealed bag of marijuana—did not provide the police with probable cause that he was committing any criminal offense.  ECF No. 26 at 20-21. Rather, and lacking any hesitation, the government argues that the commission of these two non-crimes permitted law enforcement the sweeping power to search not only Balkissoon's person, nor his vehicle, but bags within his vehicle, after he had been removed from it, in search of additional non-criminal evidence of these non-crimes.  The Fourth Amendment does not permit such far-reaching scope.

I.    **The Officers' Unjustified Failure to Activate Their Body Cameras, In Violation of NYPD Policy, Deprived the Court of the Best Evidence Available to Adjudicate the Legality of the Vehicle Stop**

At the outset, the Court need not reach the search, because the government has failed to meet its burden of proof on the stop.  The government does not seriously dispute that all three officers "fail[ed] to observe the letter of internal NYPD policy" when none activated their body-

1

worn cameras prior to the stop of Balkissoon's vehicle.  ECF No. 26 at 10 n.3.  Rather, the government dismisses their collective failure as irrelevant and of no value more than "the particular form favored by the defendant."  *Id*. at 10.  The government fails to understand that had the officers followed the Patrol Guide, this Court would have "irrefutable proof of what had occurred" when the officers first observed the Mercedes: the Court would know where it was located, what Balkissoon was doing in its driver's seat at the time of the stop, and what conversation transpired among him and the officers.  *Unites Stated v. Garcia*, 19-CR-410 (FB), 2021 WL 3516447, at *8 (E.D.N.Y. Aug. 10, 2021).  Because the officers are "responsible for depriving the court of the best and dispositive evidence in this case," as to the legality of the stop of the vehicle, "the Government has failed to sustain its burden of proof."  *Id.  See also United States v. Gibson*, 366 F. Supp. 3d 14, 26-7 (D.D.C. 2018) (rejecting contested "portions of [an officer's] testimony" because "[by] failing to adhere to [police department] policy and activate their body-worn cameras, the…officers deprived the Court from reviewing the best evidence available").  The Court can and should suppress the firearm on this basis alone.

II.    **Balkissoon's Possession of One Bag of Marijuana, After it Had Been Decriminalized, Did Not Provide Probable Cause to Search His Backpack**

The government contends that, even after it had been decriminalized, Balkissoon's open possession on his center console of one sealed bag of marijuana granted officers probable cause to search anywhere within his vehicle, including in containers such as his backpack on the backseat.  *E.g.*, ECF No. 26 at 15.  The government is mistaken.  The government agrees, as it must, that on the date of Balkissoon's arrest, marijuana possession had been decriminalized in New York.  *Id*. at 24.  Yet every case the government cites for the proposition that officers' smell or observation of marijuana supports probable cause to search for additional marijuana pre-dates decriminalization.  The legal status of the offense matters: "[P]robable cause exists where the

2

facts and circumstances within…[the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that <u>evidence of a crime</u> will be found in the place to be searched." *United States v. Gaskin*, 364 F.3d 438, 456-57 (2d Cir. 2004) (emphasis added).  When New York changed its legal classification of marijuana possession—and informed citizens of the change—it changed the consequences of that possession.  On February 6, 2021, it did not mean the same thing to possess marijuana in one's vehicle as it did when courts decided all of the cases on which the government relies.

The government agrees that at the time of this police encounter, Balkissoon's non-criminal possession of marijuana was legally equivalent to the examples in his brief: littering, ECF No. 26 at 21 n.6, possession of an open container of alcohol, possession of air freshener hanging from a rear-view mirror, possession of dirt or rocks dumped on the side of the road, and possession of raw milk.  ECF No. 23 at 15.  Yet the government cites to no case in which police observations of such things support the search of containers within a vehicle for additional evidence of them.  Indeed, the one case relied upon by the government allegedly in support of this principle states the opposite.  ECF No. 26 at 21 n.6.  There, the district court considered the legality of officers' seizure of a gun concomitant with its retrieval of garbage bags from which litter had been thrown out the window.  *United States v. Abreu*, 20-CR-52 (DLC), 2021 WL 50867, at *3 (S.D.N.Y. Jan. 6, 2021).  In upholding the search, the court held that, unlike here, "the gun and the white plastic bags were in the very same area of the car," that the officers incidentally "seized the gun in the course of retrieving the white plastic bags," and that the officer "did not conduct a full search of the entire car." *Id* at **3-4.  Applied here, to be sure, the officers had the lawful right to remove the bag of marijuana from Balkissoon's center console.

3

If, in the course of doing so, they had found it sitting atop a firearm, or observed a firearm on the passenger floorboard in plain view, their recovery of the gun would be within the parameters of the Fourth Amendment.  But that is not what officers did here.  Instead, they took the presence on the center console of the vehicle of a non-criminal quantity of marijuana, and used it to stretch the automobile exception beyond comprehension to include searches of secret compartments, and a backpack on the back seat, without lawful authority.

The government argues that the search was permissible because the presence of one bag of decriminalized marijuana supports an inference that the police will find more, or will find what the government calls "paraphernalia."  ECF No. 26 at 15, 16, 18-20.  If true, the automobile exception is an exception that swallows the rule, with no limiting principle.  First, there is nothing about the possession of one sealed bag of marijuana and one fronto leaf that logically applies that there will be more, any more so than one open container would imply the possession elsewhere in the vehicle of a second open container.  ECF No. 23 at 15-27 (citing cases).  That the car smelled of marijuana, when none was being smoked, is more indicative of past smoking, rather than the presence of hidden marijuana in a vehicle where the driver possessed it out in the open on the center console.  Second, the "paraphernalia" described by the government consists entirely of lawful objects: paper, a scale, or Febreze spray.  ECF No. 26 at 20.  At a certain point—indeed, this one—permitting officers to search containers within a vehicle for non-criminal evidence of a non-crime is beyond the bounds of a free society, and is dystopian.  The government's logic would permit a search inside containers within the vehicle for a farmer's market bag for the raw milk, a shovel and pail for the loose gravel, and a bottle opener for the open container of beer—all offenses legally equivalent to decriminalized marijuana.  The very

text of the Fourth Amendment places its limit at "reasonable" searches and seizures.  U.S. Const. amend. IV.  Given the change in laws, the overreach the government avows is anything but.

Finally, whether the presence of one bag of decriminalized marijuana provides probable cause for a search of the backpack is an objective question, not a subjective one.  The officers' testimony here that "there was no arrest to be made" upon their finding of the bag of marijuana is not a statement of their subjective intent, but rather an accurate statement of the law at the time. *See* ECF No. 23 at 18.  These officers knew that what they had found permitted them to levy a fifty-dollar fine.  Legally, it mattered to their objective analysis that the law penalizing the possession of marijuana had changed, and it matters here, too.

## III.   The Supreme Court Has Expressly Rejected the Government's Search-Incident-to-Arrest Argument

Last, the government argues that the officers' search of the backpack is justified by the search-incident-to-arrest exception to the warrant requirement.  ECF No. 26 at 22-30.  But again, the government stretches that exception such that it would apply in every arrest made by the NYPD in the course of a vehicle stop, during which they did what they do "for every car stop" when they moved the defendant, un-handcuffed, to the rear of the vehicle.  ECF No. 23 at 9-10 n.2.  The Supreme Court has expressly rejected the same argument: "Construing *Belton* broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis."  *Arizona v. Gant*, 556 U.S. 332, 347 (2009).  Instead, the exception applies only when there are "genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant."  *Id*.

None are present here.  When police took Balkissoon out of the vehicle, they patted him down, finding not only no additional marijuana, but also no weapons or other objects causing

them to fear for their safety.  They were so unafraid that they opted not even to handcuff him.  It cannot be that officers can opt to create for themselves the search incident to arrest exception to search a vehicle without a warrant by choosing not to secure a detainee.  That would be, definitionally, the police entitlement barred by *Gant*.  And for the same reasons that police lacked probable cause to search for non-criminal evidence of non-crimes under the broader automobile exception, it was not "reasonable to believe" that they would find additional evidence here.  Finally, the government's reliance on *United States v. Diaz*, 854 F.3d 197 (2d Cir. 2017), and *United States v. Dupree*, 767 F. App'x 181 (2d Cir. 2019) are misplaced.  In those cases, the Circuit permitted searches of each defendant's person following probable cause that they had committed open container and jaywalking infractions.  Those searches are distinct from the search here, in which after similarly frisking Balkissoon, but finding nothing, and removing him from the car, officers went on to search his backpack in the back seat, absent a legal basis to do so.

**IV.    Conclusion**

Given the change in laws, the limits of their observations, and their failures to comply with the Patrol Guide, the officers here exceeded the bounds of the Fourth Amendment.  For the above reasons, and those previously briefed, the Court should grant the motion to suppress.

Respectfully Submitted,

_____/s/_____

Mia Eisner-Grynberg
Staff Attorney
(718) 330-1257

cc:    Clerk of Court (EK) (by ECF and email)
       AUSA Garen Marshall (by ECF and email)