

U.S. Department of Justice

United States Attorney
Eastern District of New York

ICR:GSM
F. #2021R00231

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 14, 2021

By ECF and Email

The Honorable Eric M. Komitee
United States District Judge
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Kyle Balkissoon
                 Criminal Docket No. 21-186 (EK)

Dear Judge Komitee:

        The government appeals from Magistrate Judge James R. Cho's December 13, 2021 order releasing defendant Kyle Balkissoon on bond. This Court reviews Magistrate Judge Cho's release order de novo, see United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985), and "shall" order detention if it finds that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). For the reasons below, the government respectfully submits that the 18 U.S.C. § 3142(g) factors demonstrate by a preponderance of the evidence that the defendant is a serious risk of flight, see United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987), and by clear and convincing evidence that he poses a danger to the community, see United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), that no condition or combination of conditions of release can adequately mitigate. Accordingly, the government submits that the Court should enter a permanent order of detention pending trial.

        First, the defendant's unlawful possession of a loaded firearm with a 16-round large capacity magazine concealed within an open backpack within easy reach from where the defendant was seated in the driver seat, is an unquestionably serious offense that presents a danger to the community.[1] See 18 U.S.C. § 3142(g)(1) and (4). The Second Circuit has long held "that possession of a firearm is unequivocally a crime of violence for purposes of" the Bail Reform Act, United States v. Watkins, 940 F.3d 152, 163 (2d Cir. 2019), cert. denied, 140 S. Ct. 2584 (2020), because "[f]irearms are instruments designed for the use of violent physical force" with "no functional utility other than to threaten or cause harm to persons, animals, or property." United States v. Dillard, 214 F.3d 88, 96 (2d Cir. 2000). See, e.g., United States v. Munlyn, 607

---

        [1]    The government assumes the Court's familiarity with the facts relating to the defendant's commission of the instant offense established at the October 6, 2021 evidentiary hearing, and with the government's pre- and post-hearing briefs. (ECF Nos. 14, 26.)

F. Supp. 2d 394, 399 (E.D.N.Y. 2009) ("possession of a gun by its nature gives rise to a risk of its use in violence").

The circumstances of the offense also demonstrate that the defendant is a risk of flight and cannot be trusted to comply with court-mandated conditions of release. On the morning of his arrest, the defendant was violating the conditions of his release on parole from a term of imprisonment for his most recent robbery conviction—out past curfew and committing a new crime by possessing a firearm—undeterred by the risk of parole revocation and further incarceration. Moreover, although he was surrounded by armed police officers, the defendant attempted to flee when officers performing the search found his gun, resulting in a brief struggle by the officers to subdue and arrest him. That the defendant was not deterred from fleeing by the presence of multiple police officers indicates that the location monitoring condition imposed by Judge Cho, and enforced only by an ankle bracelet, will not be effective to prevent the defendant from again attempting to flee.

Second, the evidence of the defendant's crime, much of which the Court reviewed at the evidentiary hearing, is overwhelming and not seriously disputed. See 18 U.S.C. § 3142(g)(2). The search of the defendant's vehicle was recorded on video. The defendant was the sole occupant of the vehicle and its owner. The gun was discovered in a backpack in the vehicle, and the backpack also contained other items belonging to the defendant, including financial documents in his name. Furthermore, the officers' body-worn camera video clearly shows the defendant attempting to watch the officers' search of his vehicle and his attempt to flee at the precise moment when the gun was discovered. Finally, the defendant's DNA was found on the gun. Thus, the strength of the evidence provides the defendant with a strong incentive to flee to avoid his conviction at trial.

Third, the defendant's history and characteristics reinforce the conclusion that he is a danger to the community and a serious flight risk. See 18 U.S.C. § 3142(g)(3) and (4). The defendant has an extensive criminal history, including three prior convictions for felony offenses involving firearms, two of which were for violent robberies. The defendant was adjudicated a youthful offender on October 17, 2012, at the age of 17, and sentenced to one year in prison for attempted criminal possession of a loaded firearm, in violation of N.Y.P.L. § 265.03. While awaiting sentencing on that offense (and while a bench warrant was pending for the defendant's arrest), the defendant was arrested again on June 7, 2013, for first-degree robbery. He was subsequently convicted for first-degree robbery in which the defendant or another participant in the crime displayed what appeared to be a firearm, in violation of N.Y.P.L. § 160.15, on April 9, 2014, in Queens County Supreme Court, and sentenced to six years' imprisonment. Following sentencing for his first robbery offense, the defendant was arrested again for first-degree robbery on May 28, 2014. On January 5, 2015, in Kings County Supreme Court, the defendant was again convicted of first-degree robbery in which the defendant or another participant in the crime displayed what appeared to be a firearm, in violation of N.Y.P.L. § 160.15. The defendant was sentenced to seven years' imprisonment and was subsequently released to parole supervision on September 26, 2019. He was still serving that term of parole when he was arrested on February 7, 2021, for unlawful possession of a firearm—his fourth felony offense involving a firearm.

The defendant's history and characteristics make clear that he poses a serious risk of flight and is a danger to the community. He committed the instant offense while subject to a term of parole supervision and was undeterred by the knowledge that any further criminal conduct could result in revocation of his parole and further imprisonment. The defendant has

previously had a bench warrant issued for his non-appearance, and he even attempted to flee during the instant offense, despite being surrounded by several police officers who were forced to chase and subdue him to effect his arrest.

Since his arrest, the defendant's incentive to flee has only grown. The defendant has now been charged with a federal crime that carries a ten-year statutory maximum sentence, and the government estimates that following his trial conviction the Sentencing Guidelines will recommend a sentence of 110 to 137 months' imprisonment, capped at the high-end only by the statutory maximum of 120 months.

Accordingly, the bail package offered by the defendant—the moral suasion of two financially responsible sureties who have signed a $100,000 bond, and a condition of home detention subject to electronic monitoring—simply cannot mitigate the danger the defendant poses to the community or the risk of flight he presents. Indeed, the defendant carried out the instant offense, not only while on parole, but while living with his mother and stepfather in the exact home to which he now seeks to be released. In other words, the defendant asks the Court to believe that his promise to comply with his conditions of release is sufficient to release him back to the same residence in which he lived at the time of the instant offense despite (1) his history of convictions involving violence and firearms, (2) the fact that he has twice previously been sentenced to lengthy terms of imprisonment that have done little to deter him from further serious crimes, and (3) the fact that he carried out the instant offense while subject to conditions of parole supervision.

The Second Circuit has repeatedly stated that even elaborate conditions of home detention cannot substitute for incarceration where the defendant cannot be trusted to comply with the conditions of release. See United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993). That is the case here. The defendant has shown through his pattern of serious violent offenses, his disregard of conditions of parole supervision, and his attempt to flee from police during the commission of this offense that he cannot be trusted to comply with any conditions of release. Accordingly, the government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By: /s/ _____
Garen S. Marshall
Assistant U.S. Attorney
(718) 254-6569

cc: Clerk of Court (EK) (by ECF and email)
Mia Eisner-Grynberg, Esq. (by ECF and email)