```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  UNITED STATES OF AMERICA,

                      Plaintiff,              MEMORANDUM & ORDER
                                                21-CR-0186(EK)

            -against-

  KYLE BALKISSOON,

                      Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Defendant Kyle Balkissoon is charged with violating the felon-in-possession statute, 18 § U.S.C. 922(g). He argues that the New York Police Department ("NYPD") search that led to the discovery of the gun at issue violated the Fourth Amendment; he now moves to suppress all evidence seized during that search. The Court held an evidentiary hearing on the motion on October 6, 2021. For the reasons set forth below, Balkissoon's motion is now denied.

        **I.   Factual Background**

        The evidence adduced at the suppression hearing, at which three NYPD officers testified, established the following facts. Sometime after 1:00 a.m. on February 7, 2021, several officers from the NYPD's 67th Precinct encountered Balkissoon's black Mercedes-Benz E350 sedan at the corner of Cortelyou Road and East 34th Street in Brooklyn. Photographic evidence shows,

and Balkissoon does not affirmatively dispute, that the sedan was blocking the crosswalk.[1]  Gov. Exs. A1, A4, ECF Nos. 14-1, 14-4.  Body-camera footage shows his car parked diagonally, at approximately a 45-degree angle to both Cortelyou and East 34th Street.  See ECF Nos. 14-1, 14-4 (still images).

The officers, who were assigned to the "public safety squad," were in two patrol cars.  The lead vehicle pulled up parallel to the Mercedes.  The driver, Officer Modesto, testified that from his position "right up next to" Balkissoon's vehicle, he observed Balkissoon with his head down and hands in front of him.  Sitting up higher in his seat, he saw rolling paper in the Defendant's hands.  The Mercedes' front windows were open despite the cold, and Modesto testified that he could smell marijuana, which he took to be coming from the Mercedes.  At this point, New York State law characterized marijuana possession as a civil violation.[2]

---

[1] Balkissoon says he got "as close to the curb as [he] could," impeded by the snow piled up along the curb in both directions.  Declaration of Kyle Balkissoon ("Balkissoon Decl.") ¶ 2, ECF No. 12.  He acknowledges that the officers approached his car "while" he was parked, "waiting for my girlfriend to come downstairs."  Id. ¶ 4.

[2] New York decriminalized the possession of small quantities of marijuana in 2019, making it a violation.  See 6759-A, 2019-2020 Leg., Reg. Sess. (N.Y. 2019), codified as N.Y. Penal Law § 221.05 (effective August 28, 2019).  Such possession was fully legalized in March of 2021.  See Marijuana Regulation and Taxation Act, 1248-A, 2021-2022 Leg., Reg. Sess. (N.Y. 2021), codified as N.Y. Penal Law § 222 (effective immediately); see generally Laws & Regulations, New York State Office of Cannabis Management, https://cannabis.ny.gov/laws-regulations (last visited Jan. 9, 2022). Driving under the influence of marijuana of course remained a crime throughout.

The officers parked and exited their vehicles. As they approached the Mercedes, two more officers — Hassan and Martinez — similarly picked up the aroma of marijuana. They also observed rolling paper — a large "fronto leaf" — on Balkissoon's lap.[3] In the center console, in plain view, the officers could see what appeared to be a small bag of marijuana and a plastic cup. From the passenger-side window, Officer Martinez observed ashes in the plastic cup.

Officer Hassan went to the driver's side window and told Balkissoon he smelled marijuana. Balkissoon responded by lifting the small bag in the center console and stating, in substance, that the bag contained all the marijuana he had. Hassan asked the Defendant to step out of the car. Balkissoon complied. Hassan briefly patted the Defendant down by the driver's door and directed him to the rear of the car, where Officer Modesto engaged in conversation with Balkissoon. Officers Hassan and Martinez proceeded, at this point, to search the driver's side and front passenger side, respectively, of the Mercedes.

Prior to encountering Balkissoon by the car's trunk, Officer Modesto had learned from looking up Balkissoon on his

---

[3] A fronto leaf is a large brown leaf that can be used as rolling paper. *See* Transcript of Suppression Hearing held on October 6, 2021 ("Tr.") 106:17-23, 184:15-185:9, 191:10-15, ECF No. 22; *see also* ECF No. 14-6 (image of Balkissoon with fronto leaf on his lap).

3

phone that he had a prior firearms offense.  When speaking with Balkissoon, Modesto thought he looked "nervous" and observed that he "kept looking" away from Modesto to Officer Martinez as he searched the car's interior.

In the rear passenger seat, in arms' reach of the driver's seat, was a backpack.  Gov. Ex. C2, ECF No. 14-7 (bodycam still image).  The main compartment of the backpack was unzipped; Officer Martinez, moving to the rear compartment, went to examine it.  He removed a bottle of Febreze (an odor-eliminating spray) and observed the butt of a gun.  He yelled "92" — the NYPD code for an "arrest situation" — to his fellow officers, at which point Balkissoon promptly took off running.  Balkissoon made it past the Mercedes' open back right door but was quickly apprehended.  In addition to the firearm (a loaded Smith & Wesson 9mm semi-automatic), the backpack turned out to contain additional accoutrement for marijuana — a portable scale and more rolling paper.

## II.  Discussion

The search of the car's back seat and the interior of the backpack were permitted under the Fourth Amendment, despite the officers' not having obtained a warrant, for two reasons: first, the automobile exception to the warrant requirement, and second, the search-incident-to-arrest doctrine.  I discuss these two exceptions in turn.

**A.   Automobile Exception**

Under the automobile exception, officers can search a "readily mobile motor vehicle" without first obtaining a warrant when "probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). The scope of the search is limited to areas of the vehicle in which police have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.")

1.   Reasonable Suspicion for the Initial "Stop"

As a threshold matter, Defendant contends that the Court "need not reach the search of the vehicle, because the government has failed to sufficiently establish that the officers had a basis to stop his car in the first place." Def. Post-Hrg. Brief at 7, ECF No. 23. Given that, he argues, "all evidence gathered subsequently must be suppressed as fruit of the poisonous tree." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)). The government's evidence demonstrated otherwise, however, and the Defendant has not rebutted that evidence.

5

Specifically, the officers testified that Balkissoon's car was in the crosswalk when they came upon it, as discussed above. Thus the Fourth Amendment "stop" for which Balkissoon says the police lacked reasonable suspicion was not a traffic stop at all; Balkissoon was already stopped.[4] The police required no threshold of suspicion at all to approach the parked car. *See Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."). Once they did so, they observed the rolling paper and marijuana in plain view. *See, e.g.*, Tr. 106:14-107:10, 147:3-14.

Balkissoon contends that the Court should not credit the officers' testimony that Balkissoon was stopped when they found him, because the officers failed to turn their body cameras on for "several minutes" after NYPD policy required them to do so. ECF No. 23 at 2; *see also* NYPD Patrol Guide, No. 212-123(4) (requiring officers to turn on body cameras "prior to" any "vehicle stops" or any interaction with a person "suspected of criminal activity"). This failure, he contends, "deprived this Court of the best evidence of the location of Balkissoon's

---

[4] As noted in footnote 1, *supra*, Balkissoon essentially admits as much in his declaration. *See* ECF No. 12 ¶ 4 ("While I was parked, police officers approached my car.").

6

vehicle at the time of the stop" and, accordingly, undermines the officers' credibility. ECF No. 23 at 7-8.

Balkissoon cites no evidence that the pre-recording interaction lasted several minutes,[5] and no binding law for the proposition that the late initiation of a body-camera recording would support the rejection of three separate officers' testimony that Balkissoon's car was stopped when they encountered it. *See, e.g.*, Tr. 35:6-10 (Modesto), 105:4-6 (Hassan), 190:2-14 (Martinez).[6] Even assuming that the officers

---

[5] Balkissoon notes that before the recording starts, the officers approached his car, obtained his identification, asked about the aroma of marijuana, and obtained his statement that "this is all I have." ECF No. 23 at 5 (citing Tr. 113:24-25, 114:1-3). But the (very short) walk from the officers' car to Balkissoon's would have come before any "stop," if Balkissoon was indeed parked; Balkissoon's argument thus assumes the thing he is trying to prove. Even the request for Balkissoon's identification did not, by itself, give rise to a *Terry* stop. *See INS v. Delgado*, 466 U.S. 210, 216 (1984) (explaining that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"); *Hiibel,* 542 U.S. at 185 ("Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); *Florida v. Bostick*, 501 U.S. 429, 434-45 (1991) (explaining that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual" and "ask to examine the individual's identification"; no seizure occurs as long as the police "do not convey a message that compliance with their requests is required"). In any event, there is no reason to suppose that it would take several minutes to ask for Balkissoon's driver's license and registration, and to accomplish a single question-and-answer regarding the marijuana odor. Standing at the driver's and passenger-side windows, the officers would have been in position to accomplish that sequence in seconds.

[6] Balkissoon relies on *United States v. Garcia* for this proposition. 19-CR-410, 2021 WL 3516447 (E.D.N.Y. Aug. 10, 2021). That case is distinguishable. In *Garcia*, the officer did not activate his body-worn camera at all, and then offered "several unconvincing reasons why he failed to do so." *Id.* at *8. As a result, the critical moment – in which an apartment's resident purportedly consented to search – was not captured on camera. Moreover, the witness contradicted the officer's testimony regarding consent. *Id.; see also United States v. Alleyne*, No. 20-CR-266, 2021 WL

7

initiated recording a short time after NYPD policy required, the record is devoid of any evidence from which the Court might conclude that the police pulled Balkissoon over or directed him to park in the crosswalk.

2. Probable Cause to Search the Backpack

The automobile exception to the warrant requirement permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Here, the officers had more than probable cause to believe that Balkissoon had committed the violation of marijuana possession — they had seen the marijuana in plain view, and Balkissoon had admitted his possession. A warrantless search under the automobile exception, though, may extend only to the parts of "an automobile and the containers within it" where the police "have probable cause to believe contraband or evidence is contained." *Acevedo*, 500 U.S. at 580.

The heart of the parties' dispute here is the following question: having smelled marijuana and seen the

---

5496044, at *8 n. 18 (E.D.N.Y. Nov. 23, 2021) (distinguishing *Garcia*); *United States v. Tillard*, No. 18-CR-6091, 2019 WL 8105894, at *6 (W.D.N.Y. Oct. 4, 2019), *report and recommendation adopted*, No. 18-CR-6091, 2020 WL 57198 (W.D.N.Y. Jan. 6, 2020) ("Non-compliance with department policy, without more, does not justify suppression where an officer fails to activate his body-worn camera prior to attempting to make a traffic stop." (cleaned up)).

8

rolling papers in the Defendant's lap, the small bag of marijuana in the center console, and the plastic cup with ashes, did the officers have probable cause to believe that additional drugs or paraphernalia would be present?  The government argues, persuasively in my view, that this question has consistently been answered in the affirmative by the courts of this Circuit. For example, in *United States v. Carter*, the Court of Appeals held that "the fact that a marijuana cigarette was seen in the open ashtray . . . gave rise to a fair probability that contraband or evidence of a crime would be found" elsewhere in the vehicle.  173 F. App'x 79, 81 (2d Cir. 2006) (summary order).  The precise issue came up again recently in *United States v. Vereen*, No. 20-CR-566, 2021 WL 3771989 (S.D.N.Y. Aug. 23, 2021).  There, police officers approached a vehicle with its windows rolled down; one noted the odor of marijuana.  The officers ordered the defendant and a passenger out of the vehicle and searched the passenger compartment.  *Id.* at *1.  One officer found the remains of what appeared to be a marijuana cigarette, which he believed to be the source of the odor.  *Id.* at *2.  Despite having located the likely source of the odor, the officers continued the search and ultimately found a firearm in the vehicle's back seat.  *Id.*  In moving to suppress, the defendant argued that the officers were required to terminate the search once they found the marijuana roach.  *Id.* at *5.  In

9

denying the motion, the court observed that "probable cause to search the vehicle did not dissipate the moment [the officer] retrieved the roach in the front seat area." *Id.* at *6. Indeed, the court continued, "courts have consistently held that . . . an officer's identification of some marijuana along the way does not require the search to end at that point." *Id.* (citing cases).

Defendant cites a handful of out-of-circuit cases that are distinguishable from the instant fact pattern. *See United States v. Pena-Armenta*, No. 19-CR-348, 2020 WL 7645443 (D. Utah Dec. 23, 2020) (open container of alcohol in vehicle did not provide probable cause to search the rest of the vehicle); *United States v. Thomas*, 434 F. Supp. 3d 576 (W.D. Ky. 2020) (corked bottle of alcohol in plain view did not provide probable cause to believe that additional open containers would be found). These cases are distinguishable because a bottle of alcohol is a self-contained unit. *See Pena-Armenta*, 2020 WL 7645443, at *13 ("[A]n open container violation would typically not provide probable cause to search because an open container violation is self-contained – meaning the entirety of the violation is typically discovered upon finding the container."). Marijuana use, in contrast, generally involves more than marijuana and its container: things like the rolling papers and the scale found in the Defendant's backpack, for example. And

10

it leaves additional traces like the ashes in the cup, the bag of stems recovered, and the additional piece of fronto leaf discovered during the later inventory search at the precinct. In that regard, the facts here more closely resemble another alcohol case that the Defense acknowledged: *United States v. Washington*, 670 F.3d 1321 (D.C. Cir. 2012). In that case, the police stopped a driver and observed "a small amount of red liquid in an open cup in the car." *Id*. at 1322-23. They proceeded to search the vehicle and found a loaded gun under the driver's seat. The District Court upheld the search, and the Court of Appeals affirmed. The appellate court held that "given the 'small amount' of red liquid in the cup and the puddle on the car floorboard," it was objectively reasonable for the "officers to believe they might find another container of alcohol in the car." *Id.* at 1325.

Probable cause does not require certainty or even a more-substantial-than-not likelihood. It requires only a "fair probability" that evidence of the violation at issue will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993); *Gaskin*, 364 F.3d at 456-57. That standard was satisfied here, given what the police observed in plain view, and the officers were therefore permitted to search

11

Balkissoon's backpack pursuant to the automobile exception to the warrant requirement.

**B.   Search-Incident-to-Arrest Doctrine**

The warrantless search was permitted under a second exception — namely, the doctrine of search incident to arrest. The search-incident-to-arrest doctrine permits officers to search the passenger compartment of a vehicle when a recent occupant is properly arrested and one of two additional criteria is satisfied: either (a) "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," *Arizona v. Gant*, 556 U.S. 332, 343 (2009), or (b) "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343 (cleaned up).

As noted above, the police detained Balkissoon at the rear of the Mercedes pursuant to a legitimate arrest for marijuana possession. This is true despite the fact that marijuana use was a violation, not a crime, in February 2021. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 346-47, 355 (2001); *Kee v. City of New York*, 12 F.4th 150, 159-60 (2d Cir. 2021); *see also Alleyne*, 2021 WL 5496044, at *7; *United States v. Daniels*, No. 21-CR-81, 2021 WL 4690837, at *10 n.9 (E.D.N.Y. Oct. 7, 2021) (a "marijuana violation permits law enforcement to

12

effectuate an arrest").[7]  And at least one of *Gant*'s additional criteria was satisfied.  It was reasonable for the officers to believe that evidence relevant to the crime of arrest — more marijuana or paraphernalia — would be found, for the same reasons articulated above in the discussion of the automobile exception.  *See* Part II.A, *supra*.  Accordingly, the search was proper under this basis as well.[8]

---

[7] On January 1, 2020, the New York Criminal Procedure Law was amended to require officers making warrantless arrests for marijuana possession to issue an "appearance ticket."  N.Y.C.P.L. § 150.20.  A desk appearance ticket directs the recipient to "appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense."  N.Y.C.P.L. § 150.10.  This amendment, however, did not restrict an officer's authority to make an arrest for the offense here.  Instead, it merely changed the procedure for processing an arrestee once he is taken into custody.  *See Zarkower v. City of New York*, 461 F. Supp. 3d 31, 38 (E.D.N.Y. 2020)  ("The [desk appearance ticket] procedure operates as an alternative to holding an arrestee in custody until arraignment."); *see also* NYPD Patrol Guide, No. 208-27 (authorizing the issuance of a desk appearance ticket "in lieu of detention").

[8] Given this conclusion, I need not reach the alternative under *Gant*'s search-incident-to-arrest formulation — namely, the question of whether Balkissoon was in "reaching distance" of the back seat when he was at the trunk and the officers searched the backpack.  The government notes, however, that when the police found the gun and Balkissoon took off running, he passed the back seat virtually immediately.  *See* Gov. Post-Hrg. Brief at 6-7, ECF No. 26.

13

### III. Conclusion

For the foregoing reasons, Defendant's motion to suppress is denied.

SO ORDERED.

                                             /s/ Eric Komitee  
                                            ERIC KOMITEE  
                                            United States District Judge

Dated:    January 10, 2022  
            Brooklyn, New York